STATE ex rel., GEORGE B. WHEELER, Respondent, v. W. B. ADAMS et al., Appellants.

St. Louis Court of Appeals, May 12, 1903.

1. **Warrants on Swamp-Land Fund:** TREASURER'S REFUSAL TO PAY: LIABILITY FOR REFUSAL. Plaintiff was entitled to recover whatever sums he had been out or lost by reason of the county treasurer's refusal to pay him his warrant when presented for payment.

2. ———: ———: ———: INTENTION OF TREASURER, NOT MATERIAL. A county treasurer who refuses to pay a warrant, which he ought to pay, is liable to the owner of such warrant, in damages, no matter how honest may have been his intentions in refusing to pay.

3. ———: ———: DOUBLE DAMAGES: R. S. 1899, ART. 4, SECS. 6772 AND 6808, CONSTRUED. Revised Statutes 1899, article 4, section 6772, provides that no county treasurer shall refuse the

payment of any warrant legally drawn, when there is money sufficient to pay it and all prior warrants drawn against the same fund. Section 6808 enacts that any county treasurer violating the statute shall be guilty of a misdemeanor, and may be removed from office, and shall forfeit to the party aggrieved double damages, which may be recovered by an action in the ordinary form. *Held*, that in an action on a county treasurer's bond for damages because of his failure to pay a warrant on presentation, it was error to double the damages under the statute, in the absence of any showing that the treasurer had been convicted of a misdemeanor for refusing to pay the warrant.

4. ———: ———: LEGAL ADVICE: PENALTIES. The penalties of the statute should not be imposed on a county treasurer, where it appears that he took legal advice as to the validity of the warrant, and had been advised that the same was not legal.

Appeal from Butler Circuit Court.—*Hon. James L. Fort*, Judge.

REVERSED *(with directions)*.

*Dinning, Hamel & Dinning* for appellants.

(1) Hence, if we admit for the sake of the argument that the warrant issued by order of the county court on the swamp land fund, was a valid warrant, and that it was the duty of the treasurer, Adams, to pay the same upon presentation, yet when he failed to pay the same, he did not bring down upon his head the penalties provided for by section 6808, for his refusal to pay said warrant was not a violation of any provision contained in article 4. (2) The word "faithfully," means honestly. In construing a bond containing the words "well and faithfully to perform," etc., the Supreme Court of New York said these words applied to the "honesty of the individual and not to his ability in his trust. A mere mistake in overpayment of a check can never be alleged as a breach of trust, for the mistake may happen to a teller of the purest morals and the best capacity for business." Bank v. Clorsey, 10 Johns. 271; Bank v. Clorsey, 11 Johns. 182; Bank v. Brent, 2 Cranch C. C.

696; Alexandria v. Corse, 2 Cranch C. C. 263; Bank v. Stearns, 15 Wen. 316. (3) The syllabus in the case of State v. Chadwick, 10 Oregon 465, correctly represents the opinion in that case and is as follows: "An official bond bound a public officer to a 'faithful' discharge of his official duty. Held, that the condition was performed when the officer discharged his duty honestly and diligently with such skill as he actually possessed." (4) The record in this case shows that there was but one bond given in this case, and it also shows that said bond was given for the faithful performance of the duties of the treasurer as such; hence, if the failure of the treasurer to pay the warrant in question, was a violation of article 4 of chapter 97, and the liabilities of appellant, Adams, were as claimed by respondent, yet respondent can not recover in this action, for the treasurer and his sureties are not liable on the treasurer's general bond as such for any act of commission or omission on his part in reference to the school fund. State ex rel. v. Cook, 72 Mo. 496; Commonwealth v. Burkin, 109 Penn. St. 138; Commonwealth v. Toms, 9 Wr. 408; Commonwealth v. Hilgert, 5 P. F. S. (Pa.) 236; State v. Corey, 16 Ohio St. 17; Supervisors v. Ehlers, 45 Wis. 281; State v. Mayes, 54 Miss. 417; State v. Felton, 59 Miss. 402; County of Redwood v. Tower, 28 Minn. 45.

*E. R. Lentz* for respondent.

(1) In this case the answer admits that the warrant was drawn by order of the county court, that it was drawn upon the swamp land fund, that it was signed by the president of the county court and attested by the clerk thereof. The treasurer was purely a ministerial officer, clothed with no discretion and bound by imperative command of the law to pay this warrant. State ex rel. v. Adams, 161 Mo. 364; State ex rel. v. Johnson, 162 Mo. 633. (2) "It is a well-settled rule, that where the law requires absolutely a ministerial act to be done

by a public officer, and he neglects or refuses to do the act, he is liable in damages at the suit of a person injured. In such cases a mistake as to his duty and an honest intention is no defense.'' Knox County v. Hunolt, 110 Mo. 67; Insurance Co. v. Leland, 90 Mo. 177; Amy v. Supervisors, 11 Wal. 136; Mechem on Officers, sec. 664; McCutcheon v. Windsor, 55 Mo. 153. (3) As the treasurer had no discretion as to paying said warrant, it can make no difference that the act was not a corrupt or willful violation of the law. Knox County v. Hunolt, 110 Mo. 67.

BLAND, P. J.—Defendant Adams was the county treasurer of Butler county in the year 1899. The other defendants are the sureties on his official bond. On July 29, 1899, the county court of Butler county ordered and caused to be issued and delivered to plaintiff Wheeler a county warrant for $3,900, payable out of moneys that had been theretofore appropriated to what was called the swamp land fund, and which had come into the county treasury from the sale of swamp lands. Plaintiff presented the warrant to Adams as county treasurer and demanded payment. Although there were ample funds, which had been credited to the so-called swamp land fund in the treasury to pay said warrant, Adams refused to pay the same. Afterwards plaintiff sued out of the Supreme Court an alternative writ of mandamus directed to Adams to pay said warrant or to show cause. To the alternative writ Adams set up in his return substantially the same facts as an excuse or reason for not paying the warrant as is contained in defendant's answer in the present suit. Relator in the mandamus proceeding moved for judgment and for a peremptory writ of mandamus notwithstanding the return. The Supreme Court granted the motion and awarded a peremptory writ commanding Adams to pay the warrant which he promptly obeyed by paying the same.

The present suit is on the bond of Adams as county treasurer to recover certain damages, which plaintiff alleges he sustained by reason of the refusal of Adams to pay the warrant. The items of damages for which he sues and which the court allowed him to recover were his attorney's fees and other expenses incurred in the prosecution of the mandamus suit, and six per cent interest per annum on the amount of the warrant ($3,900) from the date of its presentation for payment to the date it was paid.

The special defense set up in the answer is to the effect that the moneys coming into the hands of the county treasurer from the sale of swamp lands belonged to and should be credited to the school fund, that there is no such fund known to the law as the county swamp land fund and that it was beyond the power and jurisdiction of the county court to draw the warrant in question payable out of moneys arising from the sale of swamp lands; that for these reasons the warrant was illegal and void.

The facts out of which the warrant originated are circumstantially stated in the answer. They are substantially the same facts and circumstances contained in the return of Adams to the alternative writ of mandamus issued by the Supreme Court and are effectually and finally disposed of against the contention of defendants by the Supreme Court in its opinion in that case (161 Mo. 369). In view of the decision of the Supreme Court in the mandamus proceeding, there is nothing left in this case for adjudication but the damages which plaintiff ought to recover, for Adams is unquestionably liable for such damages, however honest may have been his intention in refusing to pay the warrant when it was first presented. Being but a ministerial officer, he acted at his peril in refusing to pay the warrant and is liable for his mistake of duty. School Board ex rel. v. Hull, 72 Mo. App. 403; Knox County v.

Hunolt, 110 Mo. 67; Insurance Co. v. Leland, 90 Mo. 177.

Plaintiff testified that he paid $500 attorney's fee, $29.50 for printing briefs and $50 for the traveling expenses of his attorney in attending the Supreme Court in the mandamus suit, and proved by several competent witnesses that the attorney's fee of $500 was reasonable. Defendants introduced evidence tending to prove that from two hundred to two hundred and fifty dollars was a reasonable attorney's fee for the prosecution of that suit to a successful termination.

On the measure of damages the court gave the following declaration of law:

"6. The court declares the law to be that if the court shall believe and find from the testimony that the plaintiff is entitled to recover in this cause, then the plaintiff is entitled to recover, as damages, all such sums of money as he was necessarily compelled to expend and pay out for attorney's fees and other expenses incurred by him in and about all such necessary litigation as he was compelled to institute and prosecute to compel the payment of said warrant by the defendant Adams, and also the interest on the amount of said warrant at the rate of six per cent per annum from the time when the said Adams so refused to pay the said warrant until the time at which plaintiff received payment for the same, and that after the court shall have ascertained the amount of damages which plaintiff has sustained by reason of defendant Adams' refusal to pay said warrant, then the plaintiff is entitled to judgment for double the amount of damages so found to have been sustained by him."

The court, to whom the issues were submitted, sitting as a jury, found for plaintiff and assessed his damages at $893.50, and on motion of plaintiff doubled the damages assessed and rendered judgment for the penalty of the bond to be discharged on the payment of $1,787.

The declaration of law given by the court shows that the court did not take into account the eight per cent interest plaintiff testified he was compelled to pay for money borrowed during the time the payment of the warrant was withheld and which he counted on as an item of his damages. There is no question but that the plaintiff was entitled to the legal rate of interest on the $3,900 from the date of the presentation of his warrant, when it should have been paid, to the date it was actually paid, and this is what the court awarded on this item. Adams did not stand in the relation of a debtor to the plaintiff, but in the relation of a public officer wrongfully withholding a public fund to which plaintiff was entitled. To obtain this fund, plaintiff was forced to resort to the Supreme Court for the extraordinary writ of mandamus to compel Adams to perform his official duty and we have no doubt that the money he had to pay out as attorney's fees and other legitimate items of costs and expense in the prosecution of that suit was a proper element of damages to be recovered in this suit, hence we find no fault with the measure of actual damages adopted by the learned trial judge. But it is contended that there is no authority in law for doubling the damages.

Section 6772, article 4, Revised Statutes 1899, provides: "No county treasurer shall refuse the payment of any warrant legally drawn upon him and presented for payment," when there is money sufficient in the treasury to pay said warrant and all prior warrants drawn against the same fund.

Section 6808, of the same article, provides as follows:

"Any county treasurer violating any provisions of this article shall be deemed guilty of a misdemeanor and shall, on conviction, be punished as provided by law, and be removed from office, and shall forfeit and pay to the party aggrieved thereby, double damages for the injury sustained, which may be recovered by

an action in the ordinary form, to the use of such party against such treasurer and his sureties on his official bond in any court of competent jurisdiction; or the party aggrieved may recover like damages in a suit before a justice of the peace, in case the amount claimed shall not exceed his jurisdiction, against such treasurer and his sureties jointly or severally, at the option of the party suing; and such suit, when commenced, shall be conducted to final action in the same manner as provided by law for the commencement and prosecution of suits in justices' courts.''

It was on the authority of the latter section that the circuit court doubled the damages.

If an indictment or information had been filed against Adams in a court of competent jurisdiction, charging him with wrongfully and willfully refusing to pay the plaintiff's warrant and he had been put upon his trial and convicted, we think, if the fact had been alleged in the petition, there is no doubt that the damages assessed in this case might have been doubled, not as compensation to plaintiff, but as an additional penalty for the violation of the law.

The penalties prescribed by the statute to be assessed on conviction are, first, punishment "by imprisonment in the county jail not exceeding six months, or by fine not exceeding two hundred dollars, or by both such fine and imprisonment." Sec. 2378, R. S. 1899. Second, forfeiture of his office. Third, a penalty by doubling the damages actually sustained, by the party aggrieved by the commission of the misdemeanor, to be assessed, if the aggrieved party after the criminal conviction shall prosecute his civil action in the ordinary form to a successful termination. The penalty of doubling the damages does not follow as a matter of course on the recovery of a judgment against a county treasurer for an omission of duty, but it is a part and parcel of the punishment to be assessed after conviction of the treasurer of a misdemeanor committed by

a willful refusal to perform, or a willful omission to perform, some duty required of him by article 4, supra. And it seems to us that the authority to assess this punishment is as much dependent upon a verdict of guilty on an information or indictment against the treasurer as is the authority to send him to jail, to assess a fine against him, or to declare his office forfeited.   To entitle the plaintiff to have his damages doubled, it devolved on him to plead and to show that Adams had been convicted of a misdemeanor for refusing to pay plaintiff's warrant on presentation and demand.

2.   There is another view of the case which we think should prevent the doubling of the damages.   It is this:   The evidence is that Adams took legal advice in respect to the validity of the warrant and was advised that all moneys coming into his hands from the sale of swamp land belonged to and should be credited to the school fund and that it was beyond the power of the county court to divert such moneys to any other purpose; that acting upon this advice Adams, in good faith and with an honest purpose to protect what he believed to be a *sacred* fund, refused to pay the plaintiff's warrant.   It is clear that, under this evidence, he did not act willfully, that is, knowingly, in disregard of his official duty.   In such circumstances he could not and should not be convicted of a misdemeanor for refusing to pay the warrant.

The statute is criminal and penal and should be strictly construed in favor of the citizens.   Rozelle v. Harmon, 103 Mo. 339; The State v. McLain, 49 Mo. App. 398.   And the penalties prescribed by the statutes should not be imposed upon a county treasurer unless he wrongfully and willfully violates the law.   Penalties are not to be imposed for misconduct unless such conduct comes strictly within the terms of the statute. Houston, etc., R. R. v. Campbell, 43 L. R. A. (Tex.) 225.

It certainly was not the intention of the Legislature that a county treasurer should be fined and im-

prisoned and forfeit his office for honest mistake or omission in the performance of some duty required of him by article 4, nor was it its intention to punish him by doubling the damages recovered of him in a civil suit by a private individual for some mistake, honestly made in the performance of the duties of his office. On the contrary, we think that none of the penalties prescribed by section 6808 should be inflicted upon him except upon conviction of a misdemeanor in office, as where he had acted willfully in disobedience of the law, or where the act was done without reasonable grounds to believe that it was lawful. There was no conviction of Adams, no evidence that he refused to pay the warrant, without reasonable grounds for believing he was acting lawfully. We therefore reverse the judgment with directions to the circuit court to enter judgment for the amount of the actual damages assessed, to bear interest from the date of the judgment appealed from. *Reyburn* and *Goode, JJ.,* concur.