## W. T. DAMERON v. JOHN N. HAMILTON, Appellant.

### Division One, March 2, 1915.

1. **LIBEL: Instructions: Commissions of Revenue Collectors.** In an action for libel for publish ng in a newspaper that the plaintiff as county collector had illegally retained county funds, an instruction purporting to cover the whole case is *held* inconsistent and contradictory in its attempts to set out the law governing the commissions legally to be retained by county collectors.

2. ————: ————: ————: **Illegally Retained: Fees for Collecting Back Taxes.** Where, in an action for libel for pub-

lishing in a newspaper that the plaintiff as county collector had illegally retained county funds, the defendant pleaded the truth of his statement, an instruction purporting to cover the whole case should direct the jury to consider, with respect to the illegality of the plaintiff's acts, any evidence that he had retained no commissions on back taxes collected during his incumbency, since it might thus appear that, whatever he may have retained as commissions on other funds, the general balance was not in favor of the county.

3. ———: ———: ———: ———: Embezzlement. Since Sec. 3562, R. S. 1889 (the same as Sec. 1925, R. S. 1899, and Sec. 4563, R. S. 1909), makes it a felony for a collector of the revenue to retain unlawfully any sum in excess of his commissions and fees, and provides that his neglect or refusal to pay any such excess shall be prima-facie evidence of embezzlement, an instruction purporting to cover the whole case, in an action for libel for writing and publishing in a newspaper that the plaintiff as county collector had illegally retained county funds, to which action the defendant pleaded the truth of his statement, should submit the issue whether the plaintiff was prima-facie guilty of embezzlement or whether he retained only so much as he was lawfully entitled to, and it was error to instruct that if he retained more than his due, such retention was an illegal though not a criminal act, and that if the jury found that the defendant in his published statement did not so use the word "illegally" as to impute a crime to the plaintiff the defendant should have the verdict.

4. ———: ———: ———: ———: "Illegally" and "Unlawfully:" Synonymous Terms. The words "illegally" and "unlawfully" are synonymous, and they are frequently used interchangeably to express the same idea.

5. ———: ———: ———: ———: Retort: When Privileged. One who has been attacked may retort upon his adversary, but even in rebutting an accusation he must not intrude unnecessarily into the private life of his assailant, or make counter-charges against his character, unconnected with the original charge, and accordingly, in an action for libel, the fact that a heated newspaper controversy, growing out of the defendant's criticism of a city council, had continued for some time and finally grown personal, does not render privileged the defendant's statement that the plaintiff as county collector had illegally retained county funds, a matter that had not previously found place in the controversy.

Appeal from Randolph Circuit Court.—*Hon. A. H. Waller*, Judge.

AFFIRMED.

*Whitecotton & Wight* for appellant.

(1) Appellant insists that the court committed no error in this case in giving or refusing instructions on behalf of the defendant, for the reason that the instructions all taken together clearly submit the only issues in the case, namely: Was the article libelous? Was that article true? (2) The respondent complains that instruction B especially is misleading and confusing. The only thing as to said instruction that the respondent complains of is that the words "or less than $120,000" make the instruction confusing. The instruction as a whole clearly submits the proposition that if the amount of taxes collected, with the exceptions named, is in excess of $80,000 then the collector was entitled to retain only two and one-half per cent as his commission and did not and could not confuse any one as the argument before the jury at the time by counsel on both sides showed. The instruction was harmless, in view of the fact that the respondent admitted that he had retained one-half per cent more than he should have, but says it was by reason of a mistake of the law, and by way of further excuse says he did not take the commission allowed him on back taxes. In the light of these admissions, what harm possibly could these superfluous words have done? The instruction, as a whole clearly submitted the issue intended. (3) The appellant by instruction D clearly submitted the questions of the truthfulness of the article and whether, if not true, was it libelous. By this instruction, the court substantially said that the appellant had the right to reply or even retort to respondent's article provided the reply or retort was the truth and provided further that it was not libelous. There was no claim of privilege in this instruction. It properly declares the law in this case and is not prejudi-

cial to respondent's right, especially as the jury are the sole judges of the law of libel and the facts that constitute libel. It was their province to say whether the alleged libel was, in view of all the facts and circumstances, including the articles published, libelous, or, if libelous, whether it was true. (4) Furthermore, the verdict of the jury was undoubtedly for the right party and could not and would not under any instructions, have been otherwise. An article in a newspaper called out in answer to a libelous article published by the respondent, which does not go beyond what would be reasonably expected from a man who was justly exasperated, will not support an action for libel. Meyers v. Kaichen, 75 Mich. 273; Ritchie v. Staius, 73 Mich. 563. The worst that can be said against the appellant is that he permitted himself to be dragged into a newspaper war. The evidence clearly shows respondent to be unfriendly and malicious towards the appellant and unceasing in his efforts to injure appellant in his business and to provoke appellant into a newspaper controversy by false, unjust and unkind accusations and untrue insinuations and reflections upon the physical misfortunes of the appellant. Respondent also improperly and maliciously questioned the motives and private life of the appellant. At the very outset of the controversy the respondent declared himself ready for "a frolic or a fight." He at first writes under an anonymous name in a city where he does not reside and uses such terms towards appellant as "lame duck," harshly criticises the policy of appellant's paper, and impugns severely the purposes and impulses of appellant. His vituperation grows with each succeeding article; he compares appellant to a hound; and insinuates that appellant is dishonorable, dishonest and unclean, and expressly charges appellant's life has been one of hypocrisy and treachery to his home city. Finally, unable longer to conceal his identity, he admits the authorship and publication of the articles signed "Old

Timer." Then when appellant, for the first time cog-
nizant of the identity of "Old Timer" replied to re-
spondent's articles, respondent claimed, as he had no
doubt intended to claim from the beginning, that he had
been libeled.

*E. J. Howard* and *James P. Boyd* for respondent.

(1) Respondent contends that the court committed
no error in granting him a new trial for the reason
that the instructions given at appellant's request do
not define the law of libel in this State, and are er-
roneous, and were misleading to the jury, conflicting
with each other, and especially that instruction B was
conflicting and confusing within itself. Instruction D
is not the law of libel, nor is it the law in reference to
privileged articles. The law of this State on the ques-
tion of privileged articles, as a justification for the
publication of an article, is very clearly stated in the
case of Fish v. Pub. Co., 102 Mo. App. 20. In this in-
struction D, the court plainly told the jury that if the
article complained of was a reply to an attack on him
by plaintiff, the defendant had a right to reply and
even retort upon the plaintiff in self-defense. It did
not limit, as it should have done, the extent to which
one might go in reply to an article, which may have
been a previous libel. The appellant seems to have
taken the view that, because the Constitution of our
State makes the jury the sole judges of the law of libel
as of the facts, they are not bound by the instruc-
tion of the court. In the case of Arnold v. Jewett, 125
Mo. 252, this court very closely sets forth just how far
the Constitution makes the jury the sole judges of the
law of libel and of the facts. (2) A few years ago
one of the judges of this court, in referring to an in-
struction offered by a trial court in this State, denomi-
nated it "a legal curio." If any instruction can thus
be denominated, instruction B is that one. Not only is

it erroneous, but it is absolutely conflicting and contradictory within itself in its attempted statement of the law in reference to the fees allowable to county collectors as their commissions. If such an instruction can be said not to be prejudicial, and if such an instruction can be said to be a clear, terse statement of the law, then it would not be possible to write an instruction that would confuse or mislead a jury, and this instruction, coming within instructions by which the jury were bound, is sufficiently prejudicial to have justified the trial court in granting a new trial.

RAILEY, C.—Plaintiff sued defendant in the circuit court of Randolph county, Missouri, to recover damages on account of the alleged publication of a libel in defendant's newspaper. After a trial upon the merits, the jury returned a verdict for defendant. A new trial was granted plaintiff, and defendant appealed from an order granting same.

Libel.

The petition charges that on the 7th of April, 1911, defendant was the owner and publisher of the Huntsville Herald, at Huntsville, in the county aforesaid. After setting out the usual preliminaries, the petition charges:

"That said defendant on the 7th day of April, 1911, in the issue of said paper of said date, published in said paper, the Huntsville Herald, a certain article of and concerning the plaintiff, which among other things, contained the following false, defamatory, malicious and libelous language. To-wit: 'And again when the county court employed Judge W. P. Cave to examine the tax books of this county, and he reported to the county court that W. T. Dameron, the saintly hypocritical, Bible-back, amen corner model man, while county collector was shown by the books to have some of the county funds, which he had illegally retained, and which we are informed, he has never returned to the county, presumably because of some "poor little

technicality of the law,'' which all shows that this great pure man, W. T. Dameron, to possess an official record that should be the pride of the county, and worthy of emulation by coming generations of office holders.' ''

It is then averred in the petition, that said publication was false, and known to be false by defendant when published; that it was published for the purpose of injuring plaintiff in his good name and reputation among his neighbors, acquaintances and others throughout said county and State; that defendant intended by said false and malicious publication to charge, and did charge, that said Cave in his report to said court accused and charged plaintiff of being guilty of the crimes of exacting and retaining illegal fees from said county, and of being guilty of fraud in office, while plaintiff was tax collector of said county, and that plaintiff was subject to the pains and penalties provided by the laws of Missouri. It is further averred that said publication did, and does, provoke him to wrath and exposed him to public hatred, contempt and ridicule; that it deprived him of the benefits of public confidence and social intercourse; that the same was wilfully and maliciously published and circulated by defendant as aforesaid, among a great number of persons in Randolph and adjoining counties in Missouri, to the damage of plaintiff in the sum of $20,000.

Defendant's answer contains a general denial and various other matters hereafter referred to. It avers that defendant was born and reared in Randolph county, Missouri; that he was admitted to the bar in 1875, and since that date has been a practicing lawyer in said county; that during said period he had held various offices of trust, among which was that of recorder of deeds of said county, from 1891 to 1899.

It is alleged that on February 1, 1911, the plaintiff sold and delivered to defendant the Huntsville Herald, a newspaper published in Huntsville, in said

county, together with the machinery, etc., belonging to said office, for a consideration of $7500; that included in said sale, was the good will of said paper; that since said date, the defendant has been the owner and publisher of said paper; that on the 7th of April, 1911, and for a long time prior thereto, the defendant and plaintiff had been unfriendly and not on intimate terms.

It appears from the answer, that on the 17th of February, 1911, the defendant published in his paper an editorial commenting upon the manner in which the city officials of Huntsville were managing and controlling the electric light plant and the money derived from the sale of bonds belonging to said city. After the appearance of this criticism, the answer discloses that the city council of Huntsville, on February 24, passed a resolution inviting defendant to examine into the official records and acts of said council, and requesting him to point out wherein the council had not been true to the trust imposed on them by the people.

On February 21, 1911, the plaintiff, under the *nom de plume* of "Old Timer," caused to be published in the Moberly Democrat an article criticising defendant and purporting to defend the members of the city council in respect to their conduct, etc. Said article contained alleged statements of members of the council in regard to their views of the publication made by defendant criticising their acts, etc. (There was nothing in this article which in any manner referred to the report made by Mr. Cave hereafter referred to.) The answer avers that the article by "Old Timer" of February 21, supra, was published by plaintiff for the express purpose of provoking defendant to wrath, to a newspaper controversy, and for the purpose of harassing, worrying and injuring defendant in his business in the operation of said newspaper plant, etc.

On the 24th of February, 1911, defendant published in said Herald, in reply to the last article of "Old Timer," the following:

"The Moberly Democrat's correspondent in this city, judging from its bawling, in that paper of the 21st, seems to be in the condition of the suckling calf, that has lost its mother and is hungry for attention. Be patient, when the Herald has the time and space to spare from furnishing its readers with all the news we will give you some attention if necessary."

The answer further avers that on February 26, "Old Timer" published in the above Democrat another article referring to the last publication of defendant, and indulged in some strictures as to defendant's conduct in printing same, and in respect to his criticism of the city council aforesaid.

On March 6, under the caption of "News of Huntsville," the plaintiff, under the *nom de plume* of "Old Timer," caused to be published in said Democrat a lengthy article criticising defendant in regard to his conduct toward the city council, and in this communication purported to give the views of certain members of the council in regard to defendant's criticism of their acts. The members of the city council referred to purported in said article to give their views of the controversy between defendant and themselves, and undertook to explain what had been done with reference to the city affairs.

On March 10, 1911, defendant, under the caption of "The Odiousness of Anonymous Correspondence," published in said Herald a vitriolic attack upon the authors of anonymous communications, and especially "Old Timer." On March 14, the plaintiff as "Old Timer" replied in the Moberly Democrat to the last attack, and indulged in some personal criticisms of defendant in respect to his attack upon "Anonymous Correspondence." In this communication the plaintiff denied that he had made any attack upon defendant or slandered him. On the 24th of March, defendant published in said Herald an article entitled "Will History Repeat Itself?" This communication indulges in caus-

tic and severe criticism of "Old Timer" and seems to partake of a *personal* controversy, more than a discussion of any matters in which the public are concerned.

The answer then avers that on March 30 "Old Timer" published in the Democrat aforesaid an article designating defendant as a "lame duck" proprietor of the Herald. This article purported to be a reply to the preceding one of the defendant, and indulged in a great deal of criticism of defendant's conduct and the language used by him in reference to "Old Timer's" communications. It likewise referred to defendant's alleged action in failing to pay a certain tax imposed, for the purpose of stamping out smallpox, etc. This article likewise intimated that there was something in defendant's life which he could not afford to have made public, but said he would not enter into a discussion of this matter unless compelled to do so. This communication was *signed by the plaintiff,* and it was admitted therein that all the preceding articles under the *nom de plume* of "Old Timer" had been written by him. After the publication of this letter, the defendant, according to the answer, replied to same in the Herald on April 7, 1911, and a portion of this communication is made the basis of plaintiff's action as shown by the petition.

Defendant's answer avers, that in using the alleged libelous language set out in plaintiff's petition, he conveyed, and intended to convey, the fact that plaintiff had retained funds as the commissions, which he by law was not authorized to do, and had not since said report turned said funds into the county treasury; that he had failed and refused to make a correct statement to said county court after learning from the report of Mr. Cave that such settlements were incorrect; that such official conduct and official record was not worthy of emulation and the people of the county were not proud of such a record; all of which he alleges was true and the defendant believed it to be true at the

time the same was published; that the same is not libelous when properly seen and understood, in view of all the facts herein mentioned and set out in said articles and made in said report.

It is further averred in said answer that he was induced to publish the said alleged libelous article by reason of the report of Judge Cave and the editorial that appeared in the Huntsville Herald when owned and edited by the plaintiff, and which was published in said paper on December 6, 1907; that but for said conduct of plaintiff, said article and extract would never have been published by defendant; that said articles published by plaintiff in the Democrat aforesaid, were designed by him to call public attention to his own grievances and wrongs of those for whom he had assumed to act without authority through motives of ill will, envy and jealousy, and thereby injured defendant, provoked him to wrath, and caused him to be embroiled in a newspaper controversy; that thereupon by reason of the foregoing, defendant was warranted in writing and publishing said alleged libelous article in comment and condemnation of plaintiff's acts and conduct; that said articles were published in the reasonable defense of his own standing, conduct and course in life, and in defense of his own good name and reputation, and against plaintiff's said alleged libelous articles.

It is further averred that the publications of the communications by plaintiff in the Democrat aforesaid, constitute a *provocation* to the defendant for the alleged libel complained of in the petition. The answer avers that said publications made by him were without any malice against the plaintiff and without any purpose or intention on his part to injure him personally or otherwise; that he did not believe, and does not now believe, under the circumstances and facts, that said extract contained criticisms beyond the bounds of

reason, *and he avers that the same were warranted by plaintiff's conduct in the publishing of the articles in the communications aforesaid.*

The answer pleads, that, the course and conduct of plaintiff toward defendant prior to the publication of said alleged libelous article; said articles and publications, made by plaintiff against defendant; the report of Judge Cave aforesaid; the admissions of plaintiff as to said report made in said article published by him as alleged, and the facts and circumstances before set out, constitute a complete defense to plaintiff's alleged cause of action. The answer concludes with the following allegation:

"The defendant for another and further answer and defense to plaintiff's alleged cause of action set out in plaintiff's petition, says that the statement in said extract, which plaintiff alleged in his petition to be libelous, was in fact true when made."

The reply was a general denial of the allegation of defendant's answer. The record discloses that the publications as set out in defendant's answer are substantially correct and were published in the Moberly Democrat and on the dates heretofore referred to.

In passing, it should be kept in mind that the publications relating to the city council, its conduct of the city affairs, and the publications of plaintiff in his personal criticism of defendant, do not in any manner *refer* to the report made by Judge Cave to the county court, in reference to moneys collected by plaintiff as collector of said county, and a portion of which it is claimed he withheld illegally. We refer to this matter here in order that the instructions given by the court may be considered in reference to the facts.

The plaintiff at the trial introduced a large number of witnesses tending to show that his reputation for honesty, integrity, good citizenship, etc., was good. Many of these witnesses likewise gave it as their opinion that plaintiff's character was equally as good *after*

the publication of the alleged libelous article com-
plained of as it was *before,* and there was some testi-
mony tending to show some injury to plaintiff by rea-
son of such publication, but as the jury returned a ver-
dict for defendant this question is not material on the
present record.

On the foregoing facts, the court gave a number of
instructions in behalf of the respective parties, and the
jury returned a verdict in favor of defendant.   Plain-
tiff filed a timely motion for new trial and specified
therein eleven grounds of complaint.   The court below
sustained said motion in part and granted plaintiff a
new trial on account of the giving of defendant's in-
structions B, C, D, and F. No affirmative ruling was
made by the court on the other grounds specified there-
in.

This case is here upon defendant's appeal from an
order granting plaintiff a new trial.   It was sustained
on account of alleged errors in the giving, at the in-
stance of defendant, of instructions B, C, D, and F over
the objections of plaintiff.   We will consider the above
instructions in the order presented

I.   Instruction B reads as follows:

"The court instructs the jury that under the law
of this State the truth of the words charged to be libel-
ous is a complete defense; and you are
further instructed that in counties where
the total taxes and licenses levied any one
year is $80,000 or less than $120,000 the
county collector is entitled to a commis-
sion of three per cent on all such levy ex-
cept for the railroad and telegraph taxes, for which
one per cent commission is allowed, but when the
amount of such levy is more than $80,000, then a com-
mission of two and one-half per cent is allowed and
one per cent on the railroad and telegraph taxes on the
amount collected.   Now, if you find from the evidence

*(margin note:)* Instructions: Collectors' Commissions: When Illegally Retained.

that the total taxes and licenses levied and to be collected for any year while the plaintiff was collector, except amount of back taxes collected, exceeded the sum of $80,000, and that the plaintiff during any one or more of such years when the said amount was in excess of $80,000, retained three per cent on any amount of the taxes and licenses collected by him, other than back taxes, then such retention of said three per cent was in law an illegal act on the part of the plaintiff, although it was not a criminal act, and if you find that said defendant wrote and published in said article that plaintiff had illegally retained funds belonging to the county, and that defendant used said word 'illegally' in such a sense and connection as not to impute to plainiff a crime, and such writing and publication was true, then your duty is to find a verdict for the defendant.''

This instruction is complete within itself, and authorized a verdict in behalf of defendant if the jury found in favor of the latter upon the issues presented therein.

In order that such an instruction should stand the test of judicial criticism, it must be consistent within itself, and must reasonably cover the issues presented by the opposing parties. If its provisions are inconsistent, contradictory, or exclude from the consideration of the jury vital issues in the case, and it authorizes a recovery without any reference thereto, it should be condemned. [Goetz v. Railroad, 50 Mo. l. c. 474; Fitzgerald v. Hayward, 50 Mo. 516; Bluedorn v. Railroad, 108 Mo. 439; State v. Lentz, 184 Mo. 223; State v. Helton, 234 Mo. 559, 564; State v. Stubblefield, 239 Mo. 526; Patterson v. Evans, 254 Mo. l. c. 303; Pyburn v. Kansas City, 166 Mo. App. l. c. 152; Riegel v. Loose-Wiles Co., 169 Mo. App. 513; Kelley v. St. Joseph, 170 Mo. App. l. c. 360-1.]

The trial below took place on October 11, 1911. The first portion of instruction B, supra, attempted to inform the jury as to the amount of commission plain-

tiff was authorized to charge under the law as it then stood, instead of at the time when the *settlements were made*. The record discloses that plaintiff held the of-. fice of county collector from 1895 to 1899. The Revised Statutes of 1889 were in operation during said period.

Section 11481, Revised Statutes 1909, reads as follows:

"The collector shall receive as full compensation for his services in collecting the revenue, except back taxes, the following commissions and no more: . . .

"VII. In all counties wherein the total amount of all such taxes and licenses levied for any one year exceeds $60,000 and is less than $80,000, a commission of four per cent, on the first $60,000 collected and one-half of one per cent on whatever amount may be collected over $60,000.

"VIII. In all counties wherein the total amount of all such taxes and licenses levied for any one year exceeds $80,000 and is less than $120,000, a commission of three per cent on the first $80,000 collected and one and one-half per cent on whatever amount may be collected over $80,000."

Section 7640, Revised Statutes 1889, which was carried into the revision of 1899 without any changes, and there known as section 9260, reads as follows:

"The collector shall receive as full compensation for his services in collecting the revenue, except back taxes, the following commissions and no more: . . .

"VII. In all counties wherein the total amount of all such taxes and licenses levied for any one year exceeds $60,000 and is less than $80,000, a commission of three per cent on the amount collected.

"VIII. In all counties wherein the total amount of all such taxes and licenses levied for any one year

exceeds $80,000, and is less than $120,000, a commission of two and one-half per cent on the amount collected.''

The first part of instruction B reads as follows:

''And you are further instructed that in counties. where the total taxes and licenses levied any one year is. $80,000 or less than $120,000 the county collector is. entitled to a commission of three per cent on all such. levy except for the railroad and telegraph taxes, for which one per cent commission is allowed.''

That part of said instruction above quoted in plain, unequivocal language told the jury that if plaintiff's collections amounted to $80,000 or more, and were less than $120,000 in any one year, he was entitled to *three* per cent thereon, except for railroad and telegraph taxes.

The instruction, in respect to foregoing matter, did not properly declare the law of either 1889, 1899 or 1909 as above quoted, in regard to the amount of commission plaintiff was authorized to charge upon his annual collections. After having *misinformed* the jury as to the law when plaintiff's settlements were made between 1895 and 1899, the central portion of said instruction continues as follows:

''But when the amount of such levy is more than $80,000, then a commission of two and one-half per cent is allowed and one per cent on the railroad and telegraph taxes on the amount collected.''

The two sections of instruction B above quoted are plainly contradictory and are in direct conflict with each other. Instead of being a *guide* to the jury in reaching a proper conclusion as to the law of the case, it was well calculated to have directly the *opposite* effect, and to *confuse* the jury. The subsequent portion of said instruction on this subject is still more confusing. It reads: ''Now, if you find from the evidence that the total taxes and licenses levied and to be collected for any year while the plaintiff was collector,

except amount of back taxes collected, exceeded the sum of $80,000, and that the plaintiff during any one or more of such years when the said amount was in excess of $80,000, retained three per cent on any amount of the taxes and licenses collected by him, other than back taxes, then such retention of said three per cent was in law an illegal act on the part of the plaintiff, although it was not a criminal act."

The first part of the instruction gave the jury to understand that plaintiff was lawfully entitled to *three* per cent commission, except on railroad and telegraph taxes, upon his annual collections ranging from $80,000 to $120,000, while the *latter* portion, above quoted, informed the jury that the *charging* of *three* per cent under such circumstances was *illegal,* though not a criminal act. The instruction is not only misleading, inconsistent with itself and contradictory, in respect to above matters, but does not properly declare the law of the case.

Defendant, in using the alleged libelous language quoted in the petition, said, in speaking of Judge Cave:

Fees for Collecting Back Taxes. "He reported to the county court that W. T. Dameron, . . . while county collector, was shown by the books to have some of the county funds, which he had illegally retained, and which we are informed he has never returned to the county."

The answer concludes as follows: "The defendant for another and further answer and defense to plaintiff's alleged cause of action set out in plaintiff's petition, says, that the statement in said extract, which plaintiff alleged in his petition to be libelous, was in fact true when made."

Said instruction concludes as follows: "And if you find that said defendant wrote and published in said article that plaintiff had illegally retained funds belonging to the county, and that defendant used said word 'illegally' in such a sense and connection as not

to impute to plaintiff a crime, and such writing and publication was true, then your duty is to find a verdict for the defendant.''

In the conclusion of his answer, defendant charges that plaintiff did *illegally* retain county funds, *which he never returned to the county.*

On turning to the report of Judge Cave to the county court of date November 26, 1907, read in evidence, we find that *plaintiff's* name is *not mentioned* therein, nor is there any intimation found in said *report* that *plaintiff* retained more than was due him in the settlement with the county court. In order to fill up this gap in the chain of testimony, the defendant read in evidence an *editorial* written by *plaintiff*, and published in the Herald while he was owner, commenting on Judge Cave's report as follows:

''The Herald understands that Judge Cave's investigation covered the period or terms of *four* former collectors, Ratliff, Dameron, Hogue and Grimes, and that he found that Ratliff and Dameron had been allowed three per cent on *one* year's collections each when only two and one-half per cent should have been charged. . . . In four years of office, Dameron collected about $30,000 in back taxes, at three per cent, of this amount he was eititled to (but did not get) $900, but the county got it all and was the gainer, and Dameron the loser by $500.''

Turning to the back tax law in existence from 1895 to 1899; we find that section 7688, Revised Statutes 1889 (carried into the Revision of 1899, without change, as section 9309), provides that, ''Fees shall be allowed for services rendered under the provisions of this chapter as follows: To the collector . . . four per cent on all sums collected.''

This court in the well considered case of State ex rel. Shannon County v. Hawkins, 169 Mo. 618, said:

''This action requires at our hands a construction of sections 7640 and 7688, Revised Statutes 1889, now

sections 9260 and 9309, Revised Statutes 1899.  Defendant Hawkins was elected in 1896 and was collector of revenue for Shannon county for 1897 and 1898.''

The question before the court was whether the collector was entitled to a commission of *four* per cent on collections for *back taxes,* in *addition* to the general commission provided in section 7640, Revised Statutes 1889.  The conclusion reached in the Hawkins case meets with our approval.  It was held that Hawkins was entitled to the *four* per cent on back taxes, in addition to the commission allowed under section 7640, supra.  It was decided in 1902; and the Legislature since said date has seemed to be satisfied with the construction given the above law, as no substantial changes have been made in respect to same (see sections 11481 and 11511, Revised Statutes 1909).

If it be true that plaintiff collected $30,000 of back taxes during his term as collector, and that he *retained no part of the four per cent commission allowed him under section 7688, Revised Statutes 1889, in addition to the commission allowed by section 7640, Revised Statutes 1889,* then it becomes a pertinent inquiry in the case, as to whether plaintiff retained *illegal* commissions, if allowed the benefit of his *four* per cent on said $30,000 of back taxes collected by him.  If he paid over the money, *including* his commission, he would not now be entitled to recover any portion of it paid under a mistake of law.  [Hethcock v. Crawford County, 200 Mo. 170; State ex rel. v. Shipman, 125 Mo. 436.] He would be entitled however, under the law, to have the jury *legally instructed* as to what facts were necessary to show that plaintiff had retained county funds *illegally,* etc.

If plaintiff actually collected back taxes during his term as collector, and *retained* no part of his commission when settling with the county court or other authorities, he was entitled to have the instruction covering the *whole* case inform the jury that his com-

mission on the back taxes collected should be *considered* in determining whether the county had received more than it was entitled to in its settlements with him. The foregoing instruction authorized the jury to find against plaintiff in regard to his retaining funds *illegally, although his unpaid commissions on back tax collections might have been more than sufficient to square him with the county.*

Having reached the conclusion that defendant's instruction B was clearly erroneous, as well as contradictory, we have deemed it proper to call attention to the questions heretofore discussed, in order that the court, in the retrial of the cause, may duly consider the same.

II. The latter part of instruction B, supra, informed the jury, that if the taxes collected by plaintiff as collector, exclusive of the back taxes,

**Embezzlement: Prima-Facie Evidence.** exceeded $80,000 for any one year, and plaintiff retained three per cent commission thereon, the said act in retaining said three per cent was *illegal,* though not a *criminal* act. If plaintiff was only entitled to retain *two and one-half per cent* on said sum, and *wilfully* retained *three* per cent as aforesaid, when nothing was due him above said two and one-half per cent, then prima facie plaintiff was guilty of a felony. Section 3562, Revised Statutes 1889 (the same as section 1925, Revised Statutes 1899, and 4563, Revised Statutes 1909), reads as follows: "If any collector of revenue, . . . whose compensation or salary is fixed or limited by law, and who is required to account for and pay into the treasury of the State, . . . of which he is such officer, any and all fees and emoluments received in his official capacity, or on account of his office, which shall be in excess of the sum allowed to such officer, shall wilfully neglect or refuse to keep and render a true account of the moneys, fees and emolu-

ments so earned and received by him, or shall unlaw-
fully retain, use or withhold the same, or any part
thereof, in excess of the amount justly due and allowed
to him by law, every such officer so offending shall be
deemed guilty of a felony, and a neglect or refusal
to pay over said excess of fees or moneys at the proper
time, or on demand, shall be deemed prima-facie evi-
dence of his having embezzled and converted the same
to his own use; and every person who shall be con-
victed under any of the provisions of this section
shall be punished by imprisonment in the penitentiary
not exceeding five years.''

In the alleged libelous article complained of in the
petition, plaintiff was charged with *illegally* retaining
funds as county collector. The words *il-*
"Illegally and Unlawfully." *legally* and *unlawfully* as used in said
section 3562, Revised Statutes 1889, are
synonymous terms, and are frequently used inter-
changeably to express the same idea.

If plaintiff retained the three per cent in any year
when the collections for said year, aside from back
taxes, exceeded $80,000, and there was nothing due him
from commissions or otherwise as collector from some
other source, then he was prima-facie guilty of embez-
zlement under section 3562, supra. If, on the other
hand, the commissions due him under section 7640,
supra, when added to his commission of *four* per cent
allowed on back taxes, were in excess of the amount
retained by him, then he was not guilty of retaining
county funds illegally, under such circumstances. In
Hethcock v. Crawford County, 200 Mo. l. c. 175, this
court, speaking through Judge LAMM, upon this sub-
ject, said: ''The manifest theory of the statutes is
that the collector report his commissions in his settle-
ments, and that it is his privilege and duty to keep back
the commissions allowed by the law on tax collections
and not the county court's duty to see that he does.
The county court does not prepare his settlements,

nor does it furnish the data therefor. The county court does not allow his commissions; it has no lot or part in that; the law allows them on settlements and statements made by him. . . . The law presumes an officer does his duty. His duty in this case, under the law, was to keep back his commission on back taxes."

If the county and State got all they were entitled to from plaintiff as collector, then he was not guilty of retaining funds that belonged to the county or State. If, on the other hand, he retained funds of the county or State, which he received as collector and which he knew were in excess of that which was due him, then he was subject to the penalties prescribed by section 3562, Revised Statutes 1889, supra. Instruction B was intended to cover the *whole* case, and authorized a recovery within itself. It should have submitted to the jury the issue, as to whether plaintiff was prima-facie guilty of embezzlement under the statute aforesaid, or whether he was lawfully entitled to the funds which it is claimed he illegally retained.

If the jury, when propertly instructed, should find that plaintiff was lawfully entitled to retain as his commission *all the funds* which it is *charged* he *illegally* retained, then the jury would be *justified* in finding that the matters complained of in the petition constituted a libel, etc. The foregoing instruction does not come up to our conception of that which the law required, as heretofore indicated, and by reason thereof, a new trial was properly granted on account of the giving of said instruction B.

III. At the instance of defendant, the trial court gave to the jury instruction D, as follows: "The court instructs the jury that in considering this case, you will consider the circumstances under which the article complained of was written by the defendant, and whether or not said article was provoked, or in answer to one

Retort: When Privileged.

written by the plaintiff attacking defendant; and you are instructed that if you find that the plaintiff wrote said article in reply to an attack on him by plaintiff, then the defendant had the right to reply and even retort upon the plaintiff in self-defense; and if the jury believe that the defendant in said article as a whole, stated the truth, or in taking said article as a whole it is not libelous, you will return a verdict for the defendant.''

The correspondence in the record discloses that the controversy between the parties to this action grew out of an editorial, published by defendant in the Huntsville Herald of February 17, 1911, in which the city council of said town was criticized, on account of its alleged mismanagement of the water and light plant, etc., of said city.

The plaintiff, over the *nom de plume* of ''Old Timer,'' assumed to defend the city council, and published in the Moberly Democrat various articles set out in the record, which were replied to by the defendant through the Herald. These communications gradually became exceedingly personal, and although relating in a general way to the council proceedings aforesaid, the controversy finally culminated in the publication by defendant, in his paper of April 7, of the alleged libelous article, a portion of which is set out in the petition as a basis of this action. It is asserted by defendant that plaintiff, by his acts and conduct aforesaid, provoked him to wrath, by indulging in personal criticisms, over an assumed name; that plaintiff forced him into a newspaper controversy for the purpose of injuring him in his business; that by reason of the foregoing, he was justified in repelling said assaults by the publication of the editorial of April 7, 1911, supra.

It is manifest that said instruction was requested and given upon the theory that defendant was justified in using the language referred to in said communica-

tion, although it did not relate to the subject-matter of any of the previous correspondence or controversy between the parties. In Odgers on Libel and Slander (5 Ed.), p. 292, the learned author declares the law, with reference to this subject, as follows: "A man who has been attacked may, in rebutting the charges, at the same time retort upon his adversary where such a retort is a necessary part of his defense or fairly arises out of the charges made against him. [O'Donoghue v. Hussey, Ir. R. 5 C. 124.] A man who himself commenced a newspaper war, cannot subsequently come to the court as plaintiff, to complain that he has had the worst of the fray. But even in rebutting an accusation, the defendant must not intrude unnecessarily into the private life of his assailant, or make counter charges against his character, unconnected with his original charge against the defendant. The privilege extends only to such retorts as are fairly an answer to the plaintiff's attacks."

This is a very fair general statement of the law upon this subject, and is well supported by authority. In Newell on Slander and Libel (3 Ed.), sec. 619 and following, the same principle is announced as in the preceding authority. In section 620 of Newell it is said: "The law does not allow independent wrongs, of the nature treated of in this work, to be set off against each other and a balance found in favor of the less culpable party. The principle which allows proof of provocation in mitigation of damages is the same as that which is applicable in the case of a provoked assault; and if there has been time and opportunity for hot blood to cool and calm reason to resume its ordinary control, a mere provocation not connected with the wrong cannot be shown. If in this respect there is any distinction between the cases of personal encounter and assault and written defamation, it would seem that the rule should be applied with at least as great strictness in the latter class as in the

former, since the composition and publication of a libel in general involves necessarily some degree of deliberation and opportunity for reflection. There are plain reasons of public policy for this limitation of the right to reply in extenuation of such wrongs, upon remote provoking inducements not connected with the matter in issue. If the law were less strict there would be less self-restraint from acts of violence and wrong calculated to disturb the peace of society. Men would be too ready to take it upon themselves to avenge their personal grievances; and again, in the trial of causes for alleged wrongs, the principal issue would be embarrassed and confused, if not overwhelmed, by numerous collateral issues.''

We are strongly impressed by this clear, forceful announcement of the law upon this subject. The principles announced apply with much force to the facts disclosed by the record in this cause. In Fish v. St. Louis County Printing & Publishing Co., 102 Mo. App. l. c. 21, the above authorities are referred to, and Judge BLAND, speaking upon the subject under consideration here, said: ''The article published by defendant is not a denial or explanation of the Argus and the Watchman articles, but is an irrelevant attack upon the personal and professional character of the plaintiff and is therefore not privileged.'' Other authorities can be found announcing the same principle: Brewer v. Chase, 121 Mich. 526; Smurthwaite v. News Publishing Co., 124 Mich. l. c. 385; Sternberg Mfg. Co. v. Miller, 170 Fed. 298.

The question in the case at bar, as to whether plaintiff, while county collector of Randolph county, from 1895 to 1899, retained county funds illegally, was not involved in any of the newspaper controversies which are set out in the answer, and could not, therefore, in our opinion, be made the basis of a privileged attack upon plaintiff because of collateral language used by the latter in communications relating to

Dameron v. Hamilton.

another and different subject. We are satisfied, both upon principle and authority, that the rule should not be extended in respect to these matters, and that instruction D, as well as others upon the same subject, was improperly given in behalf of defendant. The court, evidently having reached the conclusion that these instructions were erroneous, granted a new trial, and its action in so doing is approved.

IV. Defendant's instruction F is subject to the same criticism as that made upon his instruction D, supra, and should not have been given. The action of the court in granting a new trial on account of the giving of this instruction was fully justified and is hereby sustained.

V. Instruction C, given in behalf of defendant as modified by the court, has been fully covered in the review of defendant's instruction D, supra. The action of the court in granting a new trial on account of the giving of said instruction meets our approval.

We have given careful consideration to all the questions involved, and have reached the conclusion that the trial court properly granted plaintiff a new trial. The judgment below is accordingly affirmed. *Brown, C.,* concurs.

PER CURIAM.—The foregoing opinion by RAILEY, C., is adopted as the opinion of the court. All the judges concur.