KNOX COUNTY v. HUNOLT *et al., Appellants.*

Division One, May 23, 1892.

1. County School Fund: MISMANAGEMENT: SUIT BY COUNTY. The county school fund belongs to the county, although set apart by law for special purposes, and the county is the proper party to sue the agents of the county for its mismanagement.

2. ———: ———: ———: VARIANCE. Where the petition in an action against the judges of the county court for misapplication of the school fund charges that the warrants were drawn upon ·and paid out of the county school fund, and the proof shows that some of them were drawn upon and paid out of the swamp-land fund, it will constitute no variance, since the proceeds of the sale of swamp lands belong to the county school fund; and it makes no difference whether the treasurer's books were kept under the one head or the other or both.

110    67|
58a 549|
. 58a 660|
110    67|
72a 407|
110    67|
75a 345|
110    67|
76a   12|
110    67
101a ⁵473

3. **County Funds, Misappropriation of:** CRIMINAL PUNISHMENT: CIVIL REMEDY. The penalty prescribed by the criminal law (R. S. 1879, sec 1331), against any member of the county court for misappropriation of the county funds, is, in no sense, a substitute for any civil remedy for the moneys illegally diverted from their proper channel.

4. **County School Fund, Diversion of by County Court.** The use by the county court of the county school fund for other county purposes is an act in direct violation of the constitution and laws of the state, and this is true notwithstanding such misapplication was treated by the county court as a loan to the county.

5. ———: MISTAKE. The judges of the county court will be held accountable to the county as trustee for the diversion of the county school fund to any other county purposes and will be liable for the replacement of the fund diverted, although done by mistake and the county received the benefit of the money misapplied.

6. ———: LIABILITY OF JUDGES: REIMBURSEMENT BY COUNTY FOR SUMS RETURNED. Where the county received the benefit of county school funds misappropriated by the county court, it should return to the judges thereof from its general revenues such sums as they have been obliged to pay in restoring the misapplied funds; but they cannot complain that warrants given them are depreciated.

*Appeal from Knox Circuit Court.*—HON. BEN. E. TURNER, Judge.

AFFIRMED.

*O. D. Jones* for appellants.

(1) The plaintiff is not the real party in interest as to the funds for which suit is brought. *State v. St. Louis Co.*, 30 Mo. 546; *Railroad v. Marion Co.*, 36 Mo. 294. Counties can only bring action in cases authorized by statute. R. S. 1889, secs. 3153, 3154; *Cole Co. v. Dallmeyer*, 101 Mo. 57; 4 American & English Encyclopedia of Law, pp. 345–6, and cases cited. Every dollar of the money used went to pay the valid indebtedness of the county. There is respectable authority for the proposition that the county is liable for it and can still be made to pay it. 4 American &

English Encyclopedia of Law, pp. 363–4; *County v. Bredenhal*, 16 Pa. St. 458; *Salt Lake v. Hollister*, 118 U. S. 259; *Marsh v. Fulton Co.*, 10 Wall. 676; *Louisiana v. Wood*, 102 U. S. 294. If the county is liable for the money, defendants are not. (2) The county court of Knox county is the legal and only party known to the law who can sue for school funds, and recover in a suit at common law. *Butler v. County Court*, 13 Mo. 112; *Veal v. County Court*, 15 Mo. 412. (3) No remedy can be pursued other than the one prescribed by Revised Statutes, 1879, section 1331. *Moore v. White*, 45 Mo. 206; *Lindell's Adm'r v. Railroad*, 36 Mo. 543; *State v. Bittinger*, 55 Mo. 596. (4) The acts charged against defendants, if true, are public wrongs, and cannot be redressed at the suit of a private person. 17 American & English Encyclopedia of Law, p. 516; *Currier v. Railroad*, 6 Blatch. (U. S.) 487; *Houch v. Wachter*, 34 Md. 265; *Enos v. Hamilton*, 27 Wis. 256; 32 Fed. Rep. 270. (5) The petition alleged that each warrant was given on and paid out of the "school fund" or "county school fund," and the evidence showed that some of them were drawn on and paid out of the swamp-land fund. This constituted a variance.

*William Clancy* for respondent.

(1) The petition is good at common law. Stephen on Pleading (Heard) pp. 4 and 262–4; *Saulsbury v. Alexander*, 50 Mo. 144; *Wing v. Campbell*, 15 Mo. 276; *Best v. Sing*, 73 Wis. 243; *Ins. Co. v. Leland*, 90 Mo. 177. (2) The petition sufficiently charges the defendants as judges of the county court with the violation of a ministerial duty they owed the county of Knox, and clearly states 'a good common-law action. *Amy v. Supervisors*, 11 Wall. 138; *Clark v. Miller*, 54 N. Y. 528; *McCutchen v. Windsor*, 55 Mo. 153; *People v.*

*Solomon*, 54 Ill. 39; Cooley on Torts, p. 398. (3) The proper measure of damages to be entered up against the judges in this case, for violation of their trust and agency of the school funds, is the amount of school funds they diverted from the fund and applied to other purposes, as proven on the trial in the circuit court. *Ledyard v. Jones*, 7 N. Y. 551; 1 Sutherland on Damages, pp. 246-7; *Goodrich v. Starr*, 18 Vt. 227; *Clark v. Miller*, 54 N. Y. 535. (4) Whenever, by either the common law or the statute of a state, a right of action has become fixed and a legal liability incurred, that liability may be enforced and the right of action pursued in any court which has jurisdiction of such matters, and can obtain jurisdiction of the parties. *Denick v. Railroad*, 103 U. S. 18; *Herrick v. Railroad*, 31 Minn. 13; *Stockman v. Railroad*, 15 Mo. App. 503; *Railroad v. Sprayberry*, 8 Baxt. (Tenn.) 341. (5) The county court is the trustee of the school funds. *Cedar Co. v. Johnson*, 50 Mo. 226; *Board of Ed. v. Boyd*, 58 Mo. 276; *Ray Co. v. Bentley*, 49 Mo. 236. And the county court was acting ministerially. 64 Mo. 179; *Schell v. Leland*, 45 Mo. 289. (6) The proceeds arising from the sale of swamp lands are a part of the county school fund. R. S. 1855, sec. 6, p. 1006.

BLACK, J.—Antone Hunolt, Frank Boone and Wellington Buford were the judges of the county court of Knox county in 1885. As such judges, they caused warrants to be drawn upon and paid out of the county and township school funds for other than school purposes; and this is a suit against them to recover damages for the wrongful use of such funds. The petition avers that the defendants, as such judges, unlawfully, knowingly and fraudulently misapplied the funds, setting out the various warrants drawn and paid. The answer disputes the right of the county to prosecute

this suit. It is then averred, in substance, that the county was financially embarrassed; that, to pay pressing county demands, the county court borrowed the school funds, that the defendants were advised and believed they had a right to thus use them, and being ignorant of the law they so used them in good faith.

The trial court disregarded the averments as to the township funds, but gave judgment for the plaintiff for the county school funds misapplied in the sum of $2,691.60, from which judgment defendants appealed.

The evidence discloses these facts: The county had no money in its treasury, and county warrants were depreciated. The county was indebted to the insane asylum for care of the insane poor, and to pay this and some other county debts the judges caused warrants to be issued upon and paid out of the county school fund. Before doing this they consulted the prosecuting attorney. He seems to have advised them that technically they ought not to use the school fund for such purposes, but that they could do so by protecting that fund by a warrant, meaning a county warrant, payable to the school fund. The defendants say Judge WILSON, formerly circuit judge, advised them it was better to borrow the school fund than to sell county warrants at forty or fifty cents on the dollar. They had information that other counties were doing the same thing. The transaction is designated on the county court records as a loan, but it does not appear that any warrant was ever issued payable to the school fund.

1. The first contention on the part of the appellant is that the county is not a party in interest, nor the trustee of an express trust, and, hence, it cannot maintain this suit. In support of this claim we are cited to *Cedar Co. v. Johnson*, 50 Mo. 225. That case and others do hold that counties have no interest in the township school funds, and that county courts are

the agents of the state and not of the counties in the management of these township funds. *Ray Co. v. Bentley*, 49 Mo. 236. Hence, the counties are not liable for the mismanagement of these township funds. *Board of Ed. v. Boyd*, 58 Mo. 276. But it is competent for the state to direct suits to be brought in the name of a county for the use of township funds. Whether the law has made any provision whereby a suit like this should be brought in the name of a county for the use of a township fund, we need not stop to inquire, for this is not such a suit as it now stands. The trial court disregarded all the averments as to the misappropriation of township funds. The case as it stands now is one to recover damages against the defendants for diverting the county, not township, funds.

In this state we have three distinct permanent school funds, namely, the state, county and township funds. The county fund belongs to the county, and is a different thing from the township fund. R. S. 1879, secs. 7073, 7103. While the county school fund is set apart by law for special purposes, still it belongs to the county, and it must follow that the county is the proper party to sue the agents of the county for its mismanagement. We entertain no doubt but this suit is properly brought in the name of the county.

2. The proof shows that some of the warrants were drawn and paid out of the swamp-land fund, while the petition states that they were drawn upon and paid out of the county school fund. The net proceeds arising from the sale of swamp lands are and have been since 1855 a part of the common county school fund. 2 R. S. 1855, sec. 6, p. 1006. The objection, therefore, to the introduction of these warrants in evidence was properly overruled, for there was in fact no variance between the proof and the averments of the petition. The funds were the same and devoted to the same pur-

poses, whether the treasurer's accounts were kept under one head or the other or both.

3. The next contention is that this action is founded on section 1331, Revised Statutes, 1879; that this section creates a new right and a remedy by indictment, and that the remedy thus pointed out by the statute is the only one that can be pursued. Section 1331 relates to various persons charged with the administrative affairs of counties, cities and towns. It provides, among other things, that any member of any county court who shall knowingly, and without authority of law, vote for the disbursement of money belonging to the county to any use other than the specific use or purpose for which the same was devised, appropriated or collected, shall be deemed to have feloniously embezzled and converted such money to his own use, and "shall be punished by imprisonment in the penitentiary not exceeding five years, or in the county jail not less than six months, or by a fine not exceeding fourfold the value of such money or property." This statute undoubtedly prescribes the punishment and the only punishment that can be imposed for the offense therein mentioned; but it does not undertake to furnish a civil remedy. The fine that may be imposed by way of punishment is in no sense a substitute for any civil remedy for the moneys illegally diverted from their proper channel. The civil remedy, if any there is, is a common-law action.

We come then to these questions, whether there has been a breach of duty on the part of the defendants; and, if there has, then whether that breach of duty furnishes the county a cause of action for the use of the county school fund.

As to the first question there can be no doubt. The eighth section of article 11 of the constitution points out from what source the county school fund

shall be derived, and provides that the same "shall belong to and be securely invested and sacredly preserved in the several counties, as a county public school fund; the income of which fund shall be faithfully appropriated for establishing and maintaining free public schools in the several counties of this state." And to the same effect is section 7103, Revised Statutes, 1879, and amended in 1881. It is made the duty of the county courts to loan this fund only on unincumbered real estate with personal security in addition thereto; and the income can be used only for the payment of teachers' wages. Sec. 7073. The use of these funds for other county purposes was an act in direct violation of the constitution and laws of this state. The fact that the defendants treated the use of these funds as a loan to the county does not help the matter, for there is no warrant in the law for any such transaction. That the defendants, in using this money as they did, violated the plain letter of the law must be conceded.

The next question is whether the county, suing to the use of the school fund, can recover the damages which that fund has sustained by the illegal use made of it by the defendants.

Our county courts and the judges thereof perform many duties, some of which are judicial, others quasi-judicial, and others purely ministerial. It has been held that members of that court act ministerially in causing a suit to be brought in the name of the county to the use of the township school fund. *Washington Co. v. Boyd*, 64 Mo. 179. So directing warrants to be issued on different funds in payment of debts is a ministerial, not judicial, act.

It is a well-settled rule that where the law requires absolutely a ministerial act to be done by a public officer, and he neglects or refuses to do the act, he is

liable in damages at the suit of a person injured. In such cases a mistake as to his duty and an honest intention is no defense. *Amy v. Supervisors*, 11 Wall. 136; *Ins. Co. v. Leland*, 90 Mo. 177; Mechem on Officers, sec. 664.

But where the public officer is by law vested with discretionary ministerial powers, and he acts within the scope of his authority, he is not liable in damages for an error in judgment, unless guilty of corruption or a wilful violation of the law. He is not liable for an honest mistake. This principle has been asserted by this court under a variety of circumstances. *Reed v. Conway*, 20 Mo. 23; *Pike v. Megoun*, 44 Mo. 492; *McCutchen v. Windsor*, 55 Mo. 149; 48 Mo. 254; *Edwards v. Ferguson*, 73 Mo. 686; *Washington Co. v. Boyd*, 64 Mo. 179.

Now while the county court and the judges thereof have vested in them discretionary powers as to the management of this county school fund for school purposes, they have no discretion whatever as to the uses to which it can be applied. The use of the fund for the payment of ordinary county debts was an act in direct violation of the constitution and laws creating that fund, and was, therefore, nothing short of malfeasance. That the judges would be liable in a private suit to persons especially injured for such a violation of law is clear, and we can see no reason why they are not liable to the county.

The county, it is true, received the benefit of the money thus diverted since it was applied in the payment of ordinary county debts. But the counties in this state are *quasi*-corporations only, with limited corporate powers. The county owned this county school fund, but it owned and held the same for a specific purpose. As to this fund the county is rather a trustee of a trust declared by law than the unqualified

owner. The county court and the judges thereof were the agents of the county, but they were agents appointed by and under the general laws. Their authority is limited and defined by law. As the defendants have misapplied this fund, and that, too, without any authority of law whatever, they must be held accountable to the county as trustee of the fund for such unlawful act. As they had no discretion by which they could apply the fund to the payment of ordinary county debts, it can make no difference that the act was not corrupt or a wilful violation of the law, and so the trial court ruled. This fund should be replaced by those who diverted it.

As the county received the benefit of the money thus misapplied, it is but simple justice that it should return to the defendants from its general revenues such sums as they may be obliged to pay in restoring this county school fund, But the defendants cannot complain that warrants given them are depreciated.

The judgment is affirmed. All concur.