N. J. HOLT, E. L. BELKNAP, W. A. OWENSBY, JOHN I. MADDUX, C. W. SMITHPETER, J. C. BUTLER and JAMES A. BONNER, Appellants, v. HARRY REA, O'BANNON BANKING CO., a Corporation, and W. C. HAWKINS.—52 S. W. (2d) 877.

Division One, September 3, 1932.

*John S. Haymes* for appellant.

*W. D. Tatlow* for respondents.

FRANK, J.—Respondent Harry Rea was the collector of revenue for Dallas County from March, 1923, to March, 1927. He gave bond as such collector, conditioned as required by law, in the sum of one hundred one thousand three hundred ninety dollars, with appellants

and respondent W. C. Hawkins as surety thereon. By statute the bond of a collector when approved and recorded is a lien against the real estate of such collector until he complies with the conditions thereof. Rea made regular settlements with the county court during his term of office. These settlements, including the final settlement, were approved by orders entered of record. His final settlement was made and he went out of office on March 1, 1927. Thereafter on May 14, 1927, respondent Banking Company loaned Rea $4,500 secured by a deed of trust on real estate which he then owned and had owned during his term of office as collector. Thereafter it was discovered that Rea's settlements were false and fraudulent in that he had not reported the collection of and paid to the county treasurer the sum of $25,089.80 which he had collected during the years 1925, 1926 and 1927. On June 13, 1928, the deed of trust which Rea had given respondent O'Bannon Banking Company was foreclosed and said Banking Company purchased the land at the foreclosure sale and received a trustee's deed therefor. On the same day the sureties on Rea's bond, having theretofore settled his shortage with the county court, brought this suit asking judgment against him for the amount they were compelled to pay the county on his shortage, and that they be subrogated to the lien given by statute on the real estate of Rea as such collector, and for all proper and equitable relief. Rea was served by publication but did not appear. The O'Bannon Banking Company answered claiming title to the land by virtue of the foreclosure of and sale under the deed of trust. No relief was asked against W. C. Hawkins. He was one of the sureties on Rea's bond but refused to join as a plaintiff in the case and for that reason was made a defendant. The decree below discharged defendants Rea and Hawkins without day and vested the title to the land in defendant, O'Bannon Banking Company. Plaintiffs appealed to the Springfield Court of Appeals and that court transferred the case here on two grounds, (1) that title to real estate was involved, and (2) that the reasonable market value of the land was $8,000.

Appellants contend that they, as sureties on the bond, having settled the collector's shortage with the county, are entitled to be subrogated to the right of the county to the statutory lien on the collector's real estate.

The statute provides that the collector of revenue in the various counties of this State, before entering upon the duties of his office, shall give bond and security to the State, to the satisfaction of the county court, conditioned that he will faithfully and punctually collect and pay over all State, county and other revenue during his term of office. [Sec. 9885, R. S. 1929.] The statute also provides that, "Said bond, when approved and recorded, shall be a lien against

the real estate of such collector until he shall have complied with the conditions thereof.'' [Sec. 9889, R. S. 1929.] The bond in question was conditioned as required by law and was approved and recorded in compliance with the statute.

█ It is settled law that settlements made between a county collector and the county court do not have the force and effect of a judgment and are not *res adjudicata.* In making such settlements the county court acts as a public accountant or financial agent of the county, and settlements so made amount to no more than an accounting between principal and agent or a settlement between individuals, and may be inquired into and corrected or set aside on the ground of fraud or mistake of fact. [State ex rel. Scotland County v. Ewing, 116 Mo. 129, 136, 22 S. W. 476; State ex rel. Lawrence County v. Shipman, 125 Mo. 436, 28 S. W. 842.] The settlements not being conclusive, the collector and the sureties on his bond are liable for any shortage in his accounts resulting from fraud or mistake of fact, whether discovered before or after he makes his final settlement and goes out of office, and as between the parties, the bond remains a lien on the collector's real estate until he complies with the conditions of the bond by paying over all revenue collected by him. ██ However, the question in this case is—what are the rights of a third party who without knowledge of any fraud or mistake of fact in the collector's settlements, acquires real estate from him relying upon the fact that he has made his final settlement, received his full discharge and gone out of office? Is such third party an innocent purchaser for value or does he take the land burdened with the lien of the collector's bond?

Section 9932, Revised Statutes 1929, makes the following provision: ''Every collector of the revenue having made settlement, according to law, of county revenue by him collected or received, shall pay the amount found due into the county treasury, and the treasurer shall give him duplicate receipts therefor, one of which shall be filed in the office of the clerk of the county court, who shall grant him full *quietus* under the seal of the court.''

Prior to 1865 the statute provided that when a county collector made settlement with the county court and paid to the treasurer the amount found due from him, the county clerk should give him a receipt for the amount paid. Section 4, Article IV, page 1350, Revised Statutes 1855. In 1865 this statute was amended so as to give the collector full *quietus* instead of a receipt for the amount paid into the county treasury, as provided in the former statute. Such is the present statute. [Sec. 9932, R. S. 1929.]

In construing this statute we must proceed upon the theory that the Legislature intended something by the amendment. It is clear

that the full *quietus* does not operate as a discharge of the liability of the collector and the sureties on his bond. Numerous decisions of this court so hold. In State to use of Bates County v. Smith, 65 Mo. 464, we held that a settlement by a collector of the revenue with the county court, and the clerk's *quietus* to him, were prima-facie evidence that he had accounted for and paid over all funds coming to his hands by virtue of his office, but did not bar an action against him and the sureties on his bond to recover funds not accounted for.

It is equally clear that under the former statute the receipt which a collector received on making his settlement with the county court did not operate as a final discharge of him and his sureties. If the liability of the collector and his sureties would be the same under either statute, what was the purpose in amending the statute so as to provide that upon the making of his settlement, the collector should be granted full *quietus* under the seal of the court, instead of a receipt for the money paid over, as provided in the former statute? The words "full *quietus*" mean final discharge. We must presume that the Legislature used these words advisedly, and by their use intended that the "full *quietus*" should operate as a discharge of something. As it does not dicharge the liability of the collector and his sureties, the only other construction to which the statute is open, is that the Legislature intended that it should operate as a discharge of the lien of the bond on the collector's real estate, as to innocent third parties, who, relying thereon, for a valuable consideration acquire said real estate or an interest therein. This construction of the statute is not only reasonable but it gives effect to the language used by the Legislature and renders the statute operative, both of which should be done where reasonably possible.

Appellant calls our attention to the case of Wimpey v. Evans, 84 Mo. 144. That was an ejectment suit for a tract of land in McDonald County. One Calvin Shields was collector of McDonald County for the years 1875 and 1876. He defaulted in his accounts. In August, 1879, the county instituted proceedings against him and the sureties on his bond and obtained a judgment for $1,158.95 which was adjudged to be a lien on the real estate owned by the collector. The land was sold under this judgment and defendant became the purchaser. Prior to the institution of the proceedings in which the county obtained its judgment and sold the land, collector Fields and one John Fields were parties to a partition suit for the partition of certain lands including the land involved in the county's suit. Judgment was rendered in the partition suit under which the land was sold and plaintiff became the purchaser. The court held that the sale under the county's judgment against the collector and his sureties conveyed the title, and affirmed the judgment of the trial

court which was in favor of defendant. Appellants cite this case in support of their contention that the lien of the bond on the collector's real estate is not discharged, even as to innocent third parties, until the collector complies with the conditions of his bond. It does not appear from the opinion in the cited case whether the collector ever made settlements with the county court. No record of the county court is shown. In other words, the opinion does not show that the records of the county court indicated prima-facie or otherwise, that the collector had complied with the conditions of his bond and was entitled to a full *quietus*. To state it another way, it does not appear from the opinion that there was a record of the county court showing prima-facie the discharge of the lien of the bond, upon which the purchasers at the partition sale relied. The statute authorizing the granting of full *quietus* to the collector under the conditions therein named, was not called to the attention of the court and its effect was neither considered nor determined. The cited case is not of controlling influence in the determination of the instant case, because of the difference in the facts of the two cases.

■ Appellants contend that the county court had no authority to release the statutory lien of the bond, and a release by one without authority is void.

It is true that county courts are not general agents of the county. They have only such authority as is expressly granted to them by statute, and when they step beyond the limits of such grant their acts are void. But this rule of law has no application to the facts of this case. The county court made regular settlements with the collector and approved such settlements by orders entered of record. The statute expressly authorizes and directs the county court to make such settlements, and the county clerk to grant the collector "full *quietus*" when he pays into the county treasurer the amount found due from him. If the legal effect of such settlement and *quietus* amount to prima-facie evidence of the release of the lien of the bond, upon which innocent third parties have a right to rely, such result furnishes no reason for saying that the county court had no authority to do what the statute commanded it to do. To state it another way, the Legislature has by statute provided what shall be done, but it is for the courts to say what the legal effect shall be when it is done.

Further contention is made that as the statute provides that the bond of the collector shall be a lien against the real estate of the collector until he complies with the conditions of the bond, such lien cannot be discharged in any other manner. In other words, the contention is that the statute having created the lien and provided the method by which it should be discharged, such method is exclusive.

This contention takes no account of the statute which directs the clerk of the court to grant the collector full *quietus* under the seal

of the court upon his paying into the county treasury the amount found due from him on approval of his settlement. These statutes should be read and considered together and when so read and considered should be construed as we have heretofore construed them in this opinion for the reasons there stated which we need not repeat here.

Further contention is made that Rea's settlements with the county court were not fair on their face because not made under oath or affirmation as required by statute, and if respondent bank had examined the record it would have discovered that fact before it made the loan.

Section 9918, Revised Statutes 1929, provides that the collector "shall return the delinquent lists and back tax books, . . . under oath or affirmation, to such court, and settle his accounts of all money received by him on account of taxes and other sources of revenue. . . ."

It clearly appears from this statute that the only items which the collector is required to return to the county court under oath is the *delinquent list* and *back tax books*. No showing was made whether the collector did or did not comply with this provision of the statute. In the absence of any showing on the subject we indulge the presumption that the collector performed his duty in this regard, and the approval of his settlement indicates that the county court so found.

The record in this case shows that respondent bank made the loan to Rea and took the deed of trust securing it, without any knowledge that his settlements with the county court were false and fraudulent, but knowing and relying upon the fact that he had made final settlement of his accounts and gone out of office. In this situation, the deed of trust so taken was a first lien against the property, and when the bank bought the property at the foreclosure sale under said deed of trust, it acquired title to the property freed from the lien of the collector's bond.

We have referred to the 1929 statutes because they are the same as the 1919 statutes which were in force at the time the events involved in this lawsuit occurred.

For the reasons stated, the decree below should be affirmed. It is so ordered. All concur.