THE STATE, Appellant, v. LORENZO D. THOMPSON and AMERICAN SURETY COMPANY OF NEW YORK, a Corporation.—85 S. W. (2d) 594.

Court en Banc, July 10, 1935.

*Roy McKittrick*, Attorney General, *Frank W. Hayes* and *James L. HornBostel*, Assistant Attorneys General, for appellant.

330

*T. Speed Mosby* for Lorenzo D. Thompson.

*Bryan, Williams, Cave & McPheeters* for American Surety Company of New York.

HAYS, J.—This is an action brought by the State against Lorenzo D. Thompson, former State Auditor, and the surety on his official bond. The petition is in three counts, the formal allegations of all of which are identical, and charges (1) it was the duty of the State Auditor "to adjust and settle all claims against the State payable

out of the State Treasury, except such claims as were expressly required by law to be audited and settled by other officers or persons" and to draw all warrants upon the State Treasury for money, except as otherwise provided by law, and to express in the body of every warrant, drawn by him upon the State Treasury, the particular fund appropriated by law out of which the same was to be paid; (2) that in 1931 the Legislature appropriated $225,000 to carry into effect the provisions of Article VII, Chapter 57, Revised Statutes 1929, respecting teacher training courses in high schools, and it was the duty of the defendant as auditor "to audit, adjust and settle" all claims payable out of said appropriation, and that in his official capacity as State Auditor the defendant did "audit, adjust and settle" three claims in favor of Botz Printing & Stationery Company, the first (first count) on October 6, 1931, for $4,520.52, the second (second count) on the 7th of November, 1931, for $617.29, and the third (third count) on the 1st of December, 1932, for $26,847.88; (3) that the claims for which the vouchers were issued arose out of printing bills which "had no connection with the teacher training courses in high schools; that the printing was not used in teacher training courses in high schools and was not included within the purposes for which the said appropriation was made and was not properly chargeable thereto;" (4) that the defendant auditor in auditing these claims and in issuing the warrants against this appropriation withdrew funds not appropriated for the payment of these warrants and thereby breached his bond.

The answers of the defendants admit Mr. Thompson was State Auditor on the dates alleged, and admit the execution and existence of the bond, and deny all other allegations.

The answers then set up two special pleas in bar. The first of these tendered the issue that upon requisitions of the State Superintendent of Education, made upon and approved by the Commissioners of Public Printing, in whose power it lay to determine the quantity and character of the matter and material of the printing under their supervision, the commissioners determined the same; that upon completion of the work they examined, corrected, adjusted, audited and endorsed the accounts therefor, for presentation to the auditor for his drawing of warrants upon the treasury for the amounts thereof, payable out of any moneys appropriated for that purpose; that all the requirements of said Chapter 115, Revised Statutes 1929, were observed and complied with, and that said audit as made by the commissioners was their own, not the auditor's, and was final and conclusive, the statute declaring that upon the making of such endorsement and presentation the auditor shall draw his warrant.

The other plea in bar was based upon an alleged settlement of the accounts of respondent Thompson as out-going auditor made by a

committee provided for by the Legislature and appointed by the Governor to inquire into the use and expenditure of State funds as intended by the Legislature which appropriated them.

The reply generally denied the facts set up in the pleas in bar.

The bond was duly executed January 15, 1931, to the State by the auditor as principal and the American Surety Company of New York as surety in the sum of $50,000. The condition of the bond was that the respondent, Lorenzo D. Thompson, would faithfully perform all the duties required or which might be required of him by law, whether as State Auditor or in any capacity in which he would be required to act *ex officio* by virtue of being State Auditor. It was approved in the manner required by law, and was in full force and effect at all times covered by the transactions involved in this suit. The case was tried to the court without a jury, the trial resulting in a finding and judgment for the defendants on all three counts of the petition, and from the judgment the State appealed.

The evidence discloses that Mr. Charles A. Lee, Superintendent of Education, made requisitions upon the Commissioners of Public Printing for the several and separate printing requirements of his department to be done by Botz Printing & Stationery Company, which had the contract for printing work for the executive departments of the State government. These requisitions designated the work to be done; the fund or appropriation from which the printing was to be paid; the dates, the character and the quantity of printing required. These requisitions were submitted to the Commissioners of Public Printing who gave the orders to the printing company for the work. The printing was all done by the contractor and delivered at the contract prices. Upon delivery, the accounts with the respective amounts due on each, and each account carrying references to the fund or money—such as State School Money, Teachers' Training Fund, Superintendent Schools' Printing—from which the same would be paid, were approved in writing by all the Commissioners of Public Printing. Thereupon the auditor drew three warrants on the State Treasurer dated respectively October 6, 1931, November 7, 1931, and December 1, 1932, in the respective sums stated in the petition, and each payable to the Botz Printing & Stationery Company "out of any money appropriated for" "State School Moneys T. T. Course," "State School Moneys Teacher Training Course," "State School Moneys Teacher Training," respectively. These warrants were paid by the State Treasurer to the payee.

The Legislature in 1931 (Laws 1931, p. 69, sec. 13), appropriated out of the State Treasury, chargeable to that part of the State revenue set apart for the support of free public schools of Missouri for the fiscal years beginning July 1, 1930, and ending June 30, 1932, the sum of Two Hundred Twenty-Five Thousand ($225,000) Dollars for

carrying into effect the provisions of Article 7, Chapter 57, Revised Statutes of Missouri, 1929, respecting teachers' training in high schools.

In the trial it was shown in the evidence introduced by appellant that all the items of printing contained in Exhibits A and B, upon which counts 1 and 2, respectively, of the petition were bottomed, were necessary and used in teachers' training instruction. Evidence was introduced by the appellant pertaining to the items contained in Exhibit C, the basis of the third count. The controverted evidential matters relate to count three alone.

Mr. Kitch, supervisor of the teacher-training work in high schools, gave testimony touching the various items contained in printing bill C and pointed out many of them which he said were not incidental to or used in teacher-training class or instructional work. Appellant contends that the testimony of this witness shows that the items so pointed out amounted to $21,877.26. Superintendent Lee, testifying on behalf of respondents, was interrogated on the same items in detail. He testified specifically thereon and said in summation that he divided his work into two branches, instruction and administration, that for the most part the items contained in Exhibit C were necessary and used as part of the teacher-training work. He also said that "we did not print a thing but what the statute required us to print. The department has no discretion and we have to print them, and the fact that it was so high is because it had not been modified for several years; when you change them it makes a large bill." Mr. Lee's testimony, in its entirety, furnished substantial evidence that all said items were used in, and were necessary as a part of, the teacher-training work, excepting certain items which he designated and which aggregated $4,093.31. The same is admitted in the brief of respondents wherein the items forming this amount are set out.

■ The first contention of the appellant is (a) that whether or not any printing could be charged to the teacher-training appropriation was purely a question of law to be determined by the court, as was declared in an instruction offered by appellant and refused by the trial judge; and (b) if that point be not tenable, then upon the preponderance of the evidence appellant was entitled to a favorable verdict or finding for the amount shown not to have been used in furtherance of teacher-training instruction, as was declared in another instruction offered by the appellant and refused by the court, or, as is contended in this court, for at least the admitted sum of $4,093.31.

Concerning these propositions we observe that it is elementary law, that it is not the function of this court on appeal to pass upon the preponderance of the evidence. The immediate question is whether the evidence in support of the finding below is substantial in its nature. We are of the opinion it was substantial

and that it raised a question of fact, introduced at the instance of appellant and over the objections of the respondents.

There are in all fourteen assignments of error, charged upon the refusal of instructions offered by the appellant. The observations hereinafter made will, we think, in effect dispose of all the assignments.

■ We examine first the defense that the settlement which was made by the legislative committee with respondent auditor as an outgoing official operated as a quietus or bar to this action on his bond. Looking to the source of the duties and powers of that body we find that the statutes (11440-11445) contain provisions in that regard, the substance of which, so far as relevant here, we state: The appointment of such a committee is required to be made in the manner and for the purpose of making such settlement, as pleaded in respondents' answer. The committee's duty is to make examination into all transactions had since the last preceding similar settlement with the auditor, and to note all errors and vouchers improperly charged against the State or incorrectly audited, etc. After which the committee shall make such settlement with the auditor and treasurer as is just and correct, and make report thereof to the General Assembly, etc., for approval or rejection, which body, so far as they approve of the settlement made, shall direct the committee to make proper entries in the books of the auditor's and treasurer's offices, etc. The several Exhibits A, B and C in evidence bore, respectively, notations of the amount of the items therein, ''State School Money,'' ''Teachers' Training Course,'' and the ''approval and cancellation'' thereof over the signatures of the chairman and associated members of the State Auditing Committee.

In support of their position regarding the legislative committee's settlement the respondents cite Holt v. Rea, 330 Mo. 1237, 1241, 52 S. W. (2d) 877; State ex rel. v. Hawkins, 169 Mo. 615, 619, 70 S. W. 119; Corbin v. Adair County, 171 Mo. 385, 389, 71 S. W. 674; Scott County v. Leftwich, 145 Mo. 26, 34, 46 S. W. 963; Hethcock v. Crawford County, 200 Mo. 170, 177, 98 S. W. 582; Dameron v. Hamilton, 264 Mo. 103, 121, 174 S. W. 425; Callaway County v. Henderson, 139 Mo. 510, 520, 41 S. W. 241. The cited cases relate to settlements made between county officers and county courts. The unanimous holdings in these cases are exemplified in the following excerpt from Holt v. Rea, supra, l. c. 1241:

''It is settled law that settlements made between a county collector and the county court do not have the force and effect of a judgment and are not res adjudicata. In making such settlements the county court acts as a public accountant or financial agent of the county, and settlements so made amount to no more than an accounting between the principal and agent, or a settlement between individuals,

and may be inquired into and corrected or set aside on the ground of fraud or mistake of fact. [State ex rel. Scotland County v. Ewing, 116 Mo. 129, 136, 22 S. W. 476; State ex rel. Lawrence County v. Shipman, 125 Mo. 436, 28 S. W. 842.]''

It is suggested by respondents that the legislative settlement is binding and not subject to attack because no fraud, collusion or mistake of fact with respect thereto is charged. The charge as contained in the petition is that the respondent Thompson's bond was breached in that the printing in question ''had no connection with the teacher-training course in high schools, was not used therein, and was not included within the purpose for which said appropriation was made; and that the actions of the auditor in auditing said claims and drawing his warrants therefor were illegal''—the last clause being a conclusion drawn from the recited fact preceding it. Issue was joined on the pleaded facts by respondents' general denial. The burden was on the appellant to prove the facts alleged as the basis of its lawsuit. In Nall v. Brennan, 324 Mo. 565, 573, 23 S. W. (2d) 1053, our court quoted approvingly from Enright v. Schaden (Mo.), 242 S. W. 89, 92, where it was said:

''The rule is that, if a cause of action has never existed, the proper answer is a general denial and any evidence which will show that it never had legal existence is admissible under such denial. [Greenway v. James, 34 Mo. 326; Northrup v. Ins. Co., 47 Mo. 435, 4 Am. Rep. 337; Hudson v. Railroad, 101 Mo. 13, 14 S. W. 15; Cushing v. Powell, 130 Mo. App. 576, 109 S. W. 1054.] . . . Whatever is necessary for a plaintiff to prove in order to make out his case is met by a general denial.''

The parties waged their evidential conflict on the field selected by appellant. In a suit by a county over a double charge made by a county officer in effecting a settlement with the court, it was held that any mistake in the settlement clearly proved is open to correction, in the same manner as though it were made with an individual. [Marion County v. Phillips, 45 Mo. 75.] It is clear from the evidence that the inclusion of certain items of Exhibit C, aggregating $4,093.31 conceded to have had no relation whatever to teacher-training but only to the general affairs in the State's department of education, were patently charged erroneously together with what the evidence shows were items that directly related to teacher-training as were also all the items of Exhibits A and B. If legislative settlements are to be regarded as resting upon a like basis and attended with the same results as county courts' settlements, as would seem to be correct, it follows that the principles enunciated above would apply. We may add in passing that the examination conducted by the legislative committee was unavoidably more or less superficial, as is indicated in their report, wherein it is in substance said that, in view of the short time

allotted for their work, and taking into account the fact the committee is considered an auditing committee, and their inability to audit all State institutions, boards and bureaus, except the Governor's office, they recommended the repeal of the law creating such a committee and the establishment of a more effectual plan. In view of the great number and variety of the items contained in the exhibits in evidence, it is difficult to conceive of any probability that the nature and details of them were observed by the committee. We are of the opinion this settlement is no bar to the maintenance of this action.

■ With respect to the audits made by the Commissioners of Public Printing: What was the nature and legal effect of the commissioners' acts? The respondents say: The State Auditor's acts were (1) quasi-judicial, as in State ex rel. Publishing Co. v. Hackmann, 314 Mo. 33, 282 S. W. 1007; State ex rel. Gehner v. Thompson, 316 Mo. 1169, 293 S. W. 391; (2) ministerial, as in State ex rel. McGrath v. Walker, 97 Mo. 162, 10 S. W. 473 and (3) clerical, as where the county clerk issues a county warrant on the county treasurer for a claim "audited, adjusted and settled" by the county court. The appellant takes the position that, as expressed in the statute (Sec. 11404, R. S. 1929), it is the duty of the State Auditor to "audit, adjust and settle all claims against the State . . . except where the statute places that duty on others;" that his acts in that behalf are, and those involved here were, quasi-judicial.

We think the Hackmann case above is not relevant in this connection. The others cited have lately been under review by the court in State ex rel. McDowell v. Smith, Auditor, 334 Mo. 653 666-668, 67 S. W. (2d) 50, 55-56. In the McDowell case we undertook to show by examples and comparison the line of demarcation between the quasi-judicial duties and acts of the auditor and his administrative, or nonjudicial, duties and acts. There is no need to repeat here what was there said and it is sufficient to say as we view the matter now before us, the function and duty to determine and designate the fund upon which he was to draw these warrants. and upon which he did draw them, were quasi-judicial and were, respectively, vested in and rested upon the State Auditor alone. That the audit, in the legal sense of the term was made by him and not by the Commissioners of Public Printing, and the commissioners' acts done in the premises were done in the performance of ministerial functions and duties only. The word "audit," as used in the statute specifically dealing with the commissioners, was used in the sense of inquiring into, hearing evidence upon, adjusting, correcting, and settling the details of the work, and its conformity with the orders given, and to determining the correctness of the charges made for the various items thereof and for the aggregate, and to certify the correct result on the whole to the auditor for his official acts in re-

gard to the claims. This interpretation follows from the distinctions drawn in the McDowell case. It is apparent that the legislative purpose was to relieve the auditor of the need to examine into masses of details. But we are cited to no statutory provision, and have discovered none, which even by implication directs or looks to any determination or designation by the commissioners of any fund out of which the accounts as certified shall be paid. The appellant's offered instruction to the effect that it was the duty of the auditor, not of the commissioners, to audit the accounts, i. e., in the sense of determining the fund on which they were to be and were drawn, was properly refused.

The appellant digresses from the facts pleaded in its petition as constitutive of its basis of attack upon the warrants by seizing upon an episode that occurred in the cross-examination, conducted by respondents' counsel, of appellant's witness Johnson, present chief clerk in the office of the State Treasurer. By way of testing Mr. Johnson's knowledge as to the proper course of action by the treasurer in paying the auditor's warrants, the counsel referred in his question to the $225,000 appropriation as a "lapsed appropriation." It is not our understanding that a casual reference such as that is sufficient to import into a case on trial the matter so referred to and make the same a constitutive basis for recovery. Yet the appellant asked, and the court refused, an instruction which declared there was no appropriation out of which the items of Exhibit C could be paid by the warrant drawn therefor by respondent auditor and that the latter in so directing payment breached his bond. The appellant here charges error in the court's ruling. We have no hesitancy in saying that the instruction was properly refused, as the case afforded no basis for it. The rule is so well established as to require no citation of authority in its support, that instructions must be within both the pleadings and the evidence. Needless to say, there are other rules of procedure of which appellant's course, in the respect under consideration, was violative.

The remaining assignments necessary to be considered will be grouped for convenience and also because the questions they involve are to some extent interrelated. The Legislature (Laws 1931, p. 28) appropriated the sum of Eighty-Seven Thousand Eight Hundred Fifty ($87,850) Dollars to the Department of Education for "general expense, including communication, printing and binding, transportation of things, travel within and without the State; material and supplies consisting of stationery and office supplies." Superintendent Lee testified that out of said sum he had allocated the sum of $40,000 for printing; that the $40,000 which he allowed for printing and supplies for his department was not sufficient and had been entirely used, and that he had either to eliminate all printing or

charge teacher-training and certain ordinary printing and supplies to the teacher-training appropriation.

On August 18, 1931, before making requisitions for said printing Mr. Lee requested of Attorney General Shartel an official opinion as to whether he lawfully could charge certain types of printing to the teacher-training appropriation as no printing bills had been charged against this appropriation before. On August 29, 1931, Attorney General Shartel, in response to Mr. Lee's inquiry, rendered an opinion to the effect that certain printing, in his opinion, might be charged to the teacher-training appropriation.

With regard to the opinion rendered by the Attorney General it is true, as appellant suggests and supports the suggestion with the citation of Dodd v. State, 18 Ind. 56, that the mere fact that the auditor acted in accordance with such opinion will not suffice to protect him or his surety; yet it is also true that "the condition of his bond, to the effect that he will faithfully discharge the duties of his office, is not broken by an honest error of judgment, or an honest mistake, or want of skill in the discharge of his duty, where the precise mode of discharging it is not pointed out by the statute." [Throop's Public Officers, sec. 243.] In the case at bar the principle of equitable estoppel is not invoked, as it was and the application thereof denied in the case of State ex rel. v. Fidelity & Guaranty Co., 236 Mo. 352, 369, 139 S. W. 163, to which our attention has been directed. So then that case is not authority to be reckoned with in this proceeding.

The Commissioners of Public Printing were also, together with the Attorney General, chief executives of the State. They were possessed of special knowledge of the State's governmental and fiscal affairs. They were in doubt with respect to their power and duty touching the printing in question. They were actuated by proper motives and acted in good faith in the premises. It would seem that their construction of their duties is prima-facie correct, and is properly for consideration, save as to the items clearly incorrectly included, as already stated, in Exhibit C. In State ex rel. White v. Ferndorf, 317 Mo. 579, 586, 296 S. W. 787, this doctrine is approvingly quoted from Cyc., pages 1140-1141:

"The construction placed upon a statute by the officers whose duty it is to execute it is entitled to great consideration, *especially if such construction has been made by the highest officers in the executive department of the government*, or has been observed and acted upon for many years, and such construction should not be overturned unless it is clearly erroneous." (Italics ours.)

Mr. Throop, in support of the text in his work from which we quoted above, cites State v. Chadwick, 10 Ore. 465, a case dealing with a State Auditor, the nature of his official obligation to the pub-

lic, and the extent thereof. In that case it was charged that the auditor breached his bond by "wrongfully, negligently and willfully auditing and allowing" certain improper and excessive claims. The auditor's answer tendered the general issue. After formulating guiding principles, the court held in part:

"The law presumes, generally, that every one may be honest and diligent, but not that he is skilled in any particular art. Hence, since the appellant (auditor) in the transaction of his appointment is not a party to a contract, the principles applicable to the case of a contracting party cannot apply to him. He executes a duty imposed by the public, and it would seem, therefore, that he should be held liable for that degree of skill only which he possesses. . . . It seems clear . . . that the misconstruction of the act of 1872 was not so clearly an error that the appellant could be charged, on the face of the act, without extrinsic evidence. The finding is merely of illegal auditing and allowing, which is insufficient. . . . If the misconstruction of the statute was the result of mere error in judgment, the auditor cannot be held liable for such error. [Kendall v. Stokes, 3 How. 98-99; Wilkes v. Dinsman, 7 How. 131; Alvord v. Barrett, 16 Wis. 175; Drewe v. Coulton, 1 East, 563.] The question is, want of due care aside, did the appellant act willfully, that is, as explained in Drewe v. Coulton, 'against his own conviction.' Whether the appellant acted in good faith or not, is a point at issue between the appellant and the State, which must be determined by a jury."

Under the application of the doctrine enunciated above the inclusion in printing bill C (count three of the petition) of the items admittedly having no connection with teachers' training was an obvious and inexcusable error, while all other items in suit were properly for the determination of the trial judge. The finding should be for the respondents on the first and second counts, and for the appellant to the extent and in the sum of $4,093.31 on the third count; and judgment should be entered in appropriate terms discharging respondents from all liability on counts one and two; and for appellant on count three for the penalty of the bond in suit, the judgment to be satisfied by the payment of $4,093.31 on execution to be issued for that sum.

It was stressed in argument that the State has suffered no loss from the payment of the accounts in question; that all of the printed matter was necessary for use, and was used, in the State's department of education. None the less that fact constitutes no defense in this suit. [Knox County v. Hunolt, 110 Mo. 67, 19 S. W. 628.] It is not the province of the courts to bestow largess or to exonerate from legal liability. That function, as regards the liability of the respondents as hereby fixed, belongs to another branch

of government, the Legislature. There have been instances where legislatures have relieved public officers from liability for public moneys that have been lost in various ways without negligence on their part. Such exoneration involves a policy of which the determination rests entirely in the judgment of the Legislature. [2*R. C. L., p. 471.]

The judgment is reversed, and the cause remanded with directions to the circuit court to dispose of it in the manner pointed out above.

All concur.