# OCTOBER, 1937.

EVA M. SHAPIRO, RESPONDENT, v. JOHN HANCOCK MUTUAL LIFE INSURANCE CO., APPELLANT.—107 S. W. (2d) 829.

Kansas City Court of Appeals. October 11, 1937.

*Albert F. Hillix* and *Elmer B. Hodges* for respondent.

*William C. Michaels, Roy P. Swanson, George L. Gisler, Harold J. Taylor,* and *Michaels, Blackmar, Newkirk, Eager & Swanson* for appellant.

SHAIN, P. J.—In this action the plaintiff seeks to recover upon a $1,000 Service Mortuary Benefit issued to Harry C. Shapiro on October 28, 1929, by the defendant. The plaintiff is the wife and designated beneficiary.

Harry C. Shapiro died July 10, 1931, and the plaintiff alleges that her husband was in the continuous employment of defendant from the time the benefit certificate was issued until death.

The plaintiff alleges that said certificate was delivered to said Harry C. Shapiro by defendant as a bonus or extra compensation in consideration of his continuous and faithful service as an employee for one year, and as an inducement for continuous and faithful performance as an employee in the future; that said certificate was given in addition and supplementary to the employment contract between said parties. Said employee accepted said certificate and complied with its terms and conditions up to the time of his death, relying on same as a binding contract of insurance.

The plaintiff alleges vexatious delay and asks for judgment for $1,000; for 10% penalty and reasonable attorney fees and costs.

The defendant answering makes admission as to incorporation and admits that on October 28, 1929, Harry C. Shapiro was in its employ as a soliciting agent. Defendant further admits the issuance and delivery of the certificate in issue.

Defendant further plead as follows:

"Defendant further states that said service mortuary benefit was never at any time in force and effect on the life of said Harry C. Shapiro; that said Harry C. Shapiro did not die while in the service of the Company as provided in said service mortuary benefit; that his service with the Company had been discontinued long prior to the date of his death; that said Harry C. Shapiro had not complied in any respect with the terms and provisions of said service mortuary benefit plan, and defendant was not at any time and is not now liable for any sum whatsoever to plaintiff or any other person by reason or in any way connected with the said service mortuary benefit.

"Further answering, defendant denies each and every allegation in plaintiff's petition contained."

Trial was by jury and verdict was for the plaintiff in the sum of $1,000. Judgment was so entered and defendant has appealed. We will continue to refer to respondent as plaintiff and appellant as defendant.

## OPINION.

Defendant's first claim of error is as follows:

"The trial court erred in refusing to give defendant's requested instruction 'B' at the close of the whole case, such instruction being in the nature of a demurrer to the evidence (113), for the reasons:

"a. There was no consideration for the 'Service Mortuary Benefit.'

"b. The evidence affirmatively showed that Mr. Shapiro did not die while in the service of defendant."

The defendant claims that the certificate issued by it is *nudum pactum* and cites Lingenfelder v. Wainright Brewing Co., 103 Mo. 578, 595, 15 S. W. 844. In that case a party having a contract with the defendant at stipulated price took advantage of a situation and demanded and received an oral contract for additional pay in excess of what his contract called for.

Defendant cites other cases wherein like situation is presented. The principle presented in such class of cases is not herein involved.

The instrument herein is in writing made, signed and delivered by defendant and therefore imports consideration. [R. S. Mo. 1929, section 2958.]

If even the certificate be considered a gift, same was fully executed and passed title.

The certificate states that same is given as a recognition of continuous and faithful service. We conclude that such language is sufficient to imply a consideration.

Mere inadequacy does not excuse promisor to a fully executed contract. [Cox v. Green Fire Brick Co., 75 S. W. (2d) 621.]

The defense of *nudum pactum*, as presented in the case at bar, is incompatible with reward for faithful service, inconsistent with the very meaning of insurance and smacks of fraud on the faithful servant. Such defense, as applied to the facts in this case, we conclude is without merit.

The second ground upon which liability is denied is the allegation that Mr. Shapiro did not die while in defendant's service. The certificate in plain language limits obligation to death while in the service of defendant and the burden rests upon plaintiff to make proof to meet this requirement.

To determine as to this question, we must search the record and give to the plaintiff the benefit of any fact or circumstance in evidence, if any, that will support the verdict of the jury and if there is ambiguity by reason of the terms "employment" and "service" same must be resolved most favorably to plaintiff.

The plaintiff makes contention that defendant's admission of record to the effect that the plan of insurance was in effect at the time Mr. Shapiro died, constitutes an admission that the contract in issue was in full force and effect.

We conclude that plaintiff's contention in this respect is not well founded. It is shown by the record that Mr. Shapiro had been on the sick list and there is shown in the record correspondence between the local management and the home office concerning the situation growing out of his illness.

The first letter, as to date, is as follows:

"John Hancock Mutual Life Insurance Company

"Louis Niman

District Manager, Kansas City, Mo.

(District No. 1)

April 3, 1931

"Mr. James W. Messenger

"Asst. Supt. of Agencies

"Boston, Massachusetts

"Dear Sir:

"I am writing you with reference to our agent H. Shapiro, debit 9510. I am sorry to report that this man has taken sick again and at this time he is seriously ill in the hospital with pneumonia and upon his recovery his physician states he will not be able to return to work for at least two or three months.

"I would ask if it would be possible for you to grant Mr. Shapiro a leave of absence for three months, not discontinuing his continuous service record. This man started to work for us on November 7, 1928. For the year of 1929 he gave our company a record of $75.00 industrial increase with $28,000 Ordinary. In 1930 this man made $50.00 increase and $12,000 Ordinary.

"Would it be possible that upon this man's return to service that he be permitted to return under his old contract of $20.00 per week collection salary? *Also may 'I ask would this leave of absence, if granted, cancel his $1,000 of insurance that the Company gives to our employees after one year's service?* (Italics ours.)

"I would want to start a new man on this debit for the week of April 13, with your permission. Awaiting your instructions, I am,

"Very truly yours,

"(signed) Louis Niman

"District Manager."

"LN:B

The reply is as follows:

"John Hancock Mutual Life Insurance Company

"Agency Department                    April 6, 1931.

"Mr. Louis Niman

"District Manager

"Kansas City #1, Missouri.

"Dear Sir:

"This will acknowledge your letter of the 3rd instant and naturally we are very sorry to learn of the illness of your agent H. Shapiro, which necessitates his giving up his work temporarily.

"In view of your recommendation the Department will authorize a leave of absence for a period of two months, the first two weeks of which you may pay compensation equal to his regular collection salary.

"This action is somewhat unusual, but we are influenced to a great extent by the fine character of service he has rendered since he entered our employ. Mr. Shapiro, provided he returns within the time specified, will be given continuous service and, of course, restored to his present basis of compensation.

"Yours very truly,

"(signed) James W. Messenger

"Asst. Supt. of Agencies."

The above presents an admission of continuous service up to something over a month prior to his death. This letter in effect admits that payment of weekly compensation to the employee is not necessarily a prerequisite to being in the service.

After the termination of the above stated extension, a further request was sent from the local office to which the home office on June 9, 1931, replied and wherein the following appears:

"While we would like very much to authorize a leave of absence in this case, nevertheless we could not do so in view of his short length of service, and still be consistent in our practice in handling similar cases.

"You will, therefore, submit customary discontinuance notice and see that Mr. Shapiro is notified of the Company's action. The question of his return to our employ on his recovery, under his old contract, may be taken up when he is ready to resume active service.

"Very truly yours,

"(signed)  James W. Messenger

GVL                          "Asst. Supt. of Agencies."

After the death of Mr. Shapiro the home office made inquiry of the local management concerning the fact as to whether the instructions contained in the letter of June 9, 1931, as to notifying Mr. Shapiro, had been complied with.

In reply to the above inquiry the following letter is shown:

"John Hancock Mutual Life Insurance Company

"Louis Niman

"District Manager, Kansas City, Mo.

"(District No. 1)

"September 2, 1931

"Mr. Thomas F. Temple

"Superintendent of Agencies

"Boston, Mass.

"Dear Sir:

"About June 13th, while Mr. Shapiro was convalescing, I informed him that his leave of absence had expired and that the company had terminated his employment. I also informed him that when he was physically able to resume his work, I believed the Company would continue him on his old contract.

"Very truly yours,

"(signed) E. I. Tenebaum

"Asst. District Manager."

The correspondence between the home office and local office of defendant of course is not conclusive as to plaintiff.

The question asked as to discontinuance of insurance, shown by italicized portion of letter of April 3, 1931, is not shown to have been answered in any of the correspondence in evidence.

The testimony of the plaintiff is to the effect that her husband was on his work for defendant in the early part of February, 1931, at which time Mr. Tenebaum, the district manager of defendant, came after her husband in the morning and brought him back in the evening.

Concerning this period the plaintiff's testimony is as follows:

"Q. When did he take sick again after that? A. He went out to work in the morning, Sunday, and was called back on his debit and came back about four or five and he collapsed with a high fever and he also had chills and I called the doctor and we rushed him to the hospital that night and he stayed in the hospital until the eleventh of May and he was very, very sick and he had six blood transfusions given to him and the boys at the office were the donors.

"Q. Well, and when he collapsed, as you say, had he been out on the work of collecting for the company? A. Yes, sir. I had to take his books from him. He had his books in his hands when he collapsed.

"Q. Tell the jury whether or not that sickness continued up until the time of his death. A. Yes, sir."

While plaintiff was on the stand, the following questions was asked and answered:

"Q. (By Mr. Hull) Did you have a conversation with Mr. Tenebaum with reference to a leave of absence and with reference to him being directed to tell your husband that he was no longer with the company? A. About a month after Mr. Shapiro's death I asked Mr. Tenebaum why this leave of absence business came up, why they waited until after he died to tell him about it. He said he had to because he wanted him to come back under the original debit and wanted him to come back under his management.''

It will be noted that in letter of September 2, 1931, supra, the assistant district manager, Mr. Tenebaum, had written to the home office that he had notified Mr. Shapiro of termination of employment.

In contradiction to the above, the plaintiff testified as follows:

"A. I asked Mr. Tenebaum why the company hadn't wanted to pay this mortuary benefit and he said it was because they had told him to give Mr. Shapiro a leave of absence and he didn't do it. He didn't want to tell Mr. Shapiro because he wanted Mr. Shapiro to come back on his debit again.''

It appears that Mr. Tenebaum was the assistant manager under whom Mr. Shapiro worked.

The plaintiff testified as follows concerning a conversation with Mr. Niman, district manager, had shortly before Mr. Shapiro's death.

"Q. Just tell the court and jury what the conversation was in that respect. A. Mr. Niman came up to me after I had talked to several of the boys and asked me how Mr. Shapiro was getting along and I told him he was getting along very nicely and was going to get back to the office very soon. He said he was glad to hear of that because he wanted him to hurry back to his old job as soon as he could and I told Mr. Niman that he had several good prospects and that he was waiting to quote them any prices until he had the new rates because they had changed and he wanted a new rate book before he quoted any prices and he said the new rate books weren't in and he would mail one to Mr. Shapiro when they came in and he was glad to hear that Mr. Shapiro was thinking about writing business up there and that he had several good prospects.''

Plaintiff's testimony is to the effect that she never knew anything about the leave of absence referred to in the letters that passed between the local and home offices until after Mr. Shapiro's death and her testimony is contradictory of the evidence that Mr. Shapiro even knew the facts of said subject or of said correspondence.

We conclude that we have outlined sufficient of the evidence from which to determine the question raised by defendant's demurrer to the evidence.

The certificate in evidence shows that the benefit was given as a recognition of continuous faithful service of over one year. The evidence is clearly to the effect that Mr. Shapiro had given continuous faithful service for over one year, and as there is evidence to the effect that he collapsed in line of duty and his illness was, thereafter continuous up to the time of his death, we conclude that such evidence alone is sufficient to entitle the case to go to the jury. We must assume that the defendant was honest and sincere in issuing its certificate as a reward for faithful services which had inured to its advantage and profit. To deprive of the benefits of such reward after the services have been rendered and benefits had by defendant, merely because the employee collapses in the performance of service and is spared the breath of life thereafter for such a length of time as to permit the employer to make a proclamation of discontinuance of employment, is contrary to principles of law and justice.

We have not included in our outline of the evidence other facts and circumstances in evidence than the direct and positive evidence stated as the premises of our conclusion above stated. Much of this evidence is in corroboration of the conclusion reached and was so construed by us in reaching our conclusion. However, we have set forth the same in connection with other claims of error made by the defendant.

Complaint is made as to plaintiff's instruction number two. Defendant's specific grounds of objection are stated as follows:

"I.

"The trial court erred in refusing to give defendant's requested instruction 'B,' at the close of the whole case, such instruction being in the nature of a demurrer to the evidence (113), for the reasons:

"a. There was no consideration for the 'Service Mortuary Benefit.'

"b. The Evidence affirmatively showed that Mr. Shapiro did not die while in the service of defendant.

"II.

"The trial court erred in giving plaintiff's requested instruction numbered II (154) for the reasons:

"a. It required no finding that Mr. Shapiro was in the service of defendant when he died.

"b. The findings required by the instruction did not, as a matter of law, establish that Mr. Shapiro died while in the service of defendant.

"c. It is not within the issues and pleadings in the case.

"d. It purports to cover the entire case and directs a verdict for plaintiff, but entirely ignores the defense that there was no consideration for the Service Mortuary Benefit."

The instruction is as follows:

"The Court instructs the jury, that, if you find and believe from the evidence, Harry C. Shapiro was employed by the defendant as one of its agents prior to 1929 and that, on or about October 29, 1929, defendant executed and delivered to said Harry C. Shapiro a Service Mortuary Benefit Contract or plan as described in the evidence, for One Thousand Dollars ($1,000) in the event said Harry C. Shapiro should die while in the service of said defendant company, and that said Service Mortuary Benefit certificate was continued in full force and effect, if you so find, up to and including the year 1931; and if you further find and believe from the evidence that during a part of the year 1931, the said Harry C. Shapiro was actively engaged by the defendant and while so engaged and on or about the 23rd day of March, 1931, he was taken ill, from which illness he never recovered, if you so find; and if you further find and believe from the evidence that said Harry C. Shapiro never sufficiently recovered from said illness to return to his regular duties for the defendant and died on July 10, 1931, from said illness, your verdict will be for the plaintiff and against the defendant, and you may assess her damages at the sum of One Thousand Dollars ($1,000), to which sum you may in your discretion add interest at the rate of six per cent (6%) per annum from July 10, 1931, to date."

Defendant's objection reverts back to a technical meaning of the word "service" when taken away from context of the certificate. According to defendant's urged theory it extended to the employees of its company a death benefit certificate for faithful service, which becomes void because the employee in the act of dying ceased to be in its service.

There is no merit in such contention. "Service" applies not only to duty already done and being done but also to required duty. The letter from the home office of April 6, 1931 concedes "continuous service" while Mr. Shapiro was on sick leave. This within itself refutes defendant's urged narrow construction of the term "service."

Defendant cites under "A" Franklin v. Kansas City, 213 Mo. App. 153, 260 S. W. 502. We find nothing in the cited opinion that even has the slightest bearing on the issue involved herein.

As to specification "B" it is like unto "A".

As to specification "C," supra, defendant cites State v. Thompson, 337 Mo. 328, 85 S. W. (2d) 594, a criminal case, and also cites other cases to the effect that instructions must be both within the pleadings and the evidence. No one would dispute the soundness of the authority cited.

The defendant does not point out wherein the instruction violates the rule other than in its printed argument wherein a play is again

made on the technical meaning of "service." The instruction purports to and does cover the whole case and we conclude correctly, and, as the certificate in issue imports consideration a dispute as to the same is an affirmative defense and needs not to be incorporated in plaintiff's instruction.

Complaint is made of refusal to give defendant's asked instructions H, J and K. Instruction H is as follows:

"The Court instructs the jury, if you find and believe from the evidence that the said Harry C. Shapiro, mentioned in evidence, was not in the service of the defendant company on the date of his death, to-wit; July 10, 1931, then your verdict will be for the defendant."

The instruction is but another play upon the word "service" and was properly refused.

Instructions J and K are drawn upon the theory that the defendant could terminate employment at will under any and all conditions and thereby terminate the benefit.

Defendant urges that said instructions should have been given because same presented defendant's theory of the case. We must concede as much. However, defendant's theory is that the contract is *nudum pactum* for want of consideration. According to defendant's theory of the case, an employee after having given faithful service in the past and in present act of service is stricken with fatal malady, then the fact that he lingers and is not directly on the job defeats the benefit for the reason that the dying employee is not in service at the time of death.

Defendant cites Shelton v. Wolf Cheese Co. (Mo. App.), 93 S. W. while in the line of duty, stricken with a fatal malady it can by prompt and arbitrary action terminate the employment before death and thereby defeat the benefit.

It would appear that the trial court did not acquiesce in the defendant's theory of the case and refused the instructions that would have recognized such theory as the law of the case. We conclude that the trial court was right.

Complaint is made in a general way as to remarks of the court during trial of the case. From our examination of the record, we find no comment by the court that we consider reversible error.

Objection is made as to certain exhibits as to the official record of Mr. Shapiro's employment. These exhibits are but self-serving in nature and we conclude there was no reversible error in refusing admission of same.

Complaint is made as to refusal to permit Mr. Niman, the general manager, to testify that Mr. Shapiro neither paid cash or had money deducted from his salary for the benefit.

· We conclude that the certificate speaks for itself and the plaintiff does not contend that any consideration, other than faithful services, was paid. We see no reversible error in refusing the testimony.

Complaint is made of permitting plaintiff to testify as to certain conversations had with Mr. Niman, district manager, on the ground that statements made by Niman were not binding upon the company.

Defendant cites Shelton v. Wolf Cheese Co. (Mo. App.) 93 S. W. (2d) 947. Also cites Voras v. James Stewart & Co., 223 Mo. App. 385, 17 S. W. (2d) 651.

When it be considered that Mr. Niman was a general agent of defendant and as talking about a matter in controversy concerning the very questions in controversy herein, it will be seen that the above citations and other citations given fail to support defendant's position. Further defendant's counsel had interrogated plaintiff as to the conversation with Mr. Niman.

We conclude that it was not error to permit plaintiff to testify as to such conversation.

We have gone through the record in this case and conclude that defendant had a fair trial and conclude that the judgment is manifestly for the right party. Judgment affirmed. All concur.